609 So.2d 1055 (1992)
AETNA CASUALTY & SURETY COMPANY, Plaintiffs-Appellants,
v.
LIVELY-CULPEPPER CHEVROLET OLDSMOBILE, INC., Defendants-Appellees.
No. 24285-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1992.
*1056 Cook, Yancey, King & Galloway, Lisa Dunn Folsom, Shreveport, for plaintiffs-appellants.
Culpepper & Associates by Ann Winchester, Jonesboro, for defendants-appellees.
Before MARVIN, HIGHTOWER and BROWN, JJ.
BROWN, Judge.
Aetna Casualty & Surety Company applied for writs to this court seeking a review of the trial court's denial of their motion for summary judgment. Another panel of this court denied the writ but remanded to allow an appeal. That panel reasoned that the denial of summary judgment in fact granted judgment in favor of defendants.

FACTS AND PROCEDURAL HISTORY
Aetna brought suit against Lively-Culpepper Chevrolet Oldsmobile, Inc. (Lively Chevrolet), as principal, and Bobby L. Culpepper (Culpepper), as indemnitor, seeking reimbursement for $8,534.14 that Aetna paid on behalf of Lively Chevrolet under a motor vehicle dealer fidelity bond.
In accordance with LSA-R.S. 32:1251 et seq. Aetna wrote a motor vehicle dealer fidelity bond in favor of Lively Chevrolet in the amount of $20,000.00. As the principal, Lively Chevrolet guaranteed the bond and Culpepper, individually, signed an indemnity agreement to hold Aetna harmless "from and against any and all damages, loss, costs, charges and expenses of whatsoever kind or nature, including counsel and attorney fees, whether incurred under retainer or salary or otherwise, which it shall or may, at any time, sustain or incur by reason or consequence of suretyship."
On November 30, 1987, Aetna received an "Application for Claim against Surety" from the Louisiana Department of Public Safety and Corrections for taxes due on the sale of a vehicle in 1986 from Lively Chevrolet to Lonzo D. Green. The total sale's tax claimed was $1,097.00. On January 27, 1988, Aetna received a "Notice of Levy" from the State Department of Revenue and Taxation indicating that Lively Chevrolet had not paid the sales tax on nine other vehicles it had sold in 1986. The total tax claimed on the sale of these nine vehicles was $7,437.14. On January 11, 1988, and March 31, 1988, Aetna sent letters to Lively Chevrolet and Culpepper to determine if the taxes claimed by these state agencies had been paid. Neither defendant had paid the amounts claimed.
On April 12, 1988, Aetna paid the Department of Revenue and Taxation $7,437.14 and the Department of Public Safety and Corrections $1,097.00. These payments were made on behalf of Lively Chevrolet. On December 22, 1988, Aetna filed suit against both Lively Chevrolet and Culpepper for reimbursement of the $8,534.14 that Aetna paid on behalf of Lively Chevrolet. Lively Chevrolet answered the lawsuit with a general denial. Culpepper, however, filed an exception of no cause of action alleging that to have a cause of action against the guarantor Aetna first had to attempt to enforce its claim against the principal, Lively Chevrolet.
On March 10, 1989, the trial court sustained Culpepper's exception of no cause of action. On March 23, 1989, Aetna filed a motion for new trial for reargument. On April 14, 1989, the trial court granted Aetna's motion of new trial and allowed Aetna to file a supplemental and amended petition. On April 14, 1989, Aetna filed a supplemental and amended petition alleging that Culpepper's agreement amounted to a commercial suretyship. On May 12, *1057 1989, Culpepper renewed his exception of no cause of action. The record shows this exception has not been heard. In addition, Culpepper filed a third party demand against Donnie L. Lively.
Aetna filed a motion for summary judgment on October 10, 1991. The crux of Aetna's argument was that Lively Chevrolet, as principal under the bond, and Culpepper, as indemnitor, were liable, in solido, to Aetna for the sum of $8,534.14.
In opposition, defendants argued that the Department of Revenue and Taxation and the Department of Public Safety and Corrections were not "persons" within the meaning of LSA-R.S. 32:1252 and 32:1254(M)(4) and the debt paid by Aetna was not covered by the bond.
In an amended order on December 6, 1991, the trial court denied Aetna's summary judgment motion stating that although the state agencies were "persons" within the meaning of the LSA-R.S. 32:1251 et seq., the debt paid (sales taxes) was not covered by the motor vehicle fidelity bond.
Aetna applied for a writ to this court. On February 20, 1992, we denied Aetna's writ but remanded for appeal because the consequence of holding that the debt, i.e., sales tax, was not covered by the bond was to render judgment for defendants.[1]
IS THE FAILURE OF A MOTOR VEHICLE DEALERSHIP TO REMIT TAXES COLLECTED A DEBT COVERED BY THE FIDELITY BOND
The trial court ruled that the debt paid by Aetna on behalf of Lively Chevrolet was not within the coverage of the fidelity bond. On appeal, Aetna argues that the debt, i.e., the sales taxes, is covered by the bond.
LSA-R.S. 32:1254(M)(4) states:
Such bonds shall be in a form to be approved by the commission and shall be conditioned so that the manufacturer, dealer, or lessor shall comply with the conditions of any written contract made by such dealer or lessor in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of this Chapter or any other law of Louisiana in the conduct of the business for which he is licensed. Such bond shall be made payable to the secretary of the Department of Public Safety and Corrections or to his successor in office, for the use, benefit, and indemnity of any persons who shall suffer any loss as a result of any violation of the conditions hereinabove contained....
The statute clearly states that "[s]uch bonds ... shall be conditioned so that the..., dealer, ... shall comply with the conditions of any written contract made by such dealer ... in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of this Chapter or any other law of Louisiana in the conduct of the business for which he is licensed." (emphasis added).
Louisiana law requires motor vehicle dealers to collect sales tax on vehicles sold. LSA-R.S. 47:303 B. When the dealer fails to remit these taxes, the Department of Revenue and Taxation must seek collection under LSA-R.S. 47:1569, et seq. If in the present case, the dealership did not remit taxes it collected from the sale of the vehicles to the Department of Revenue and Taxation, it violated the law. Such a violation is one of those activities covered by the fidelity bond. See LSA-R.S. 32:1254(M)(4), supra.
ARE THESE STATE AGENCIES "PERSONS" WITHIN THE MEANING OF LSA-R.S. 32:1251 ET SEQ.
In common usage, the term "person" does not include the sovereign. Primate Protection League v. Tulane Educ. Fund, ___ U.S. ___, ___, 111 S.Ct. 1700, *1058 1707, 114 L.Ed.2d 134, 146-48 (1991); Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45, 53 (1989). Nevertheless, there is no hard and fast rule of exclusion of the sovereign and a conventional reading of "person" may be disregarded if the purpose, subject matter, context, and legislative history or executive interpretation of the statute indicate an intent, by use of the term, to bring the state or nation within the scope of the law. Primate Protection League, ___ U.S. at ___, 111 S.Ct. at 1707, 114 L.Ed.2d at 146-48; Reppond v. City of Denham Springs, 572 So.2d 224, 227-228 (La.App. 1 Cir.1990).
We find that the Louisiana Legislature intended, by the use of the term "person," to include the State of Louisiana and its political subdivisions in LSA-R.S. 32:1251 et seq. Unquestionably, the production, transportation and marketing of automobiles is a proper subject for regulation by the legislature under its police power. Louisiana Motor Vehicle Com'n v. Wheeling Frenchman, 235 La. 332, 103 So.2d 464, 469 (1958). In LSA-R.S. 32:1251, entitled "Declaration of public policy," the Louisiana Legislature stated:
The legislature finds and declares that the distribution and sale of motor vehicles in the state of Louisiana vitally affects the general economy of the state, the public interest, and the public welfare, and that in order to promote the public interest, and the public welfare, and in the exercise of its police power, it is necessary to regulate and to license motor vehicle manufacturers, distributors, dealers, and lessors doing business in Louisiana, in order to prevent frauds, impositions, and other abuses upon its citizens, and ... to promote the public safety and prevent disruption of the system of distribution of motor vehicles to the public and prevent deterioration of facilities for servicing motor vehicles and keeping same safe and properly functioning, and prevent bankrupting of motor vehicle dealers and lessors, who might otherwise be caused to fail because of such unfair practices and competition, thereby resulting in unemployment, disruption of leases, and non-payment of taxes and loans, and contribute to an inevitable train of undesirable consequences, including economic depression.
Clearly evident from this statement of public policy is that the distribution and sale of motor vehicles not only affects the general economy of the state but also the welfare of its citizens. In order to protect the economic welfare of the state and its citizens, the legislature promulgated LSA-R.S. 32:1251 et seq. The statutes contained therein regulate the distribution and sale of motor vehicles by setting forth licensing procedures with which motor vehicle dealers must comply.
One of the specific statutes that the legislature passed to regulate the automobile sales industry is LSA-R.S. 32:1254, supra. This statute requires that before a motor vehicle dealer receives a license, said dealer must post a fidelity bond in the sum of $20,000. LSA-R.S. 32:1254(M)(4) states that "[s]uch bond shall be made payable to the secretary of the Department of Public Safety for the use, benefit, and indemnity of any persons who have suffered loss as a result of any violation of the conditions hereinabove contained." (emphasis added). Although LSA-R.S. 32:1254(M)(4) does not explicitly state that a governmental entity is to benefit from the bond, the context and legislative policy behind the statute allows us to find the state and its agencies to be included in the term "person."
Such an application is consistent with, and tends to effectuate the public policy evidenced by the statute. The purpose of taxation on the part of the government is to provide funds with which to promote the general welfare and protection of its citizens. The state demands and receives taxes so that it can perform the functions of government. The citizen pays these taxes in order that he may, by means thereof, be secured in the enjoyment of the benefits of an organized society. Thus, it is in the public's welfare and interest that sales taxes be collected and remitted to the state's coffers. Additionally, the consumer is ultimately responsible for payment of the *1059 sales tax and it is appropriate for the state to insure its payment from the dealer.
We hold that all the considerations which moved the legislature to confer the right to recover under the bond upon individuals, firms, corporations, partnerships or associations injured by violations of the statute apply with equal force to the State of Louisiana and its governmental entities.

SUMMARY JUDGMENT
LSA-C.C.P. Arts. 966-969 provide the statutory authority and procedure for a motion for summary judgment. Art. 966 provides the standard upon which to judge a motion for summary judgment and states, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." The burden of proof is on the party who moves for summary judgment to prove that there is no genuine issue of material fact. Klohn v. Louisiana Power & Light, 406 So.2d 577 (La.1981); Swindle v. Haughton Wood Company, Inc., 458 So.2d 992 (La. App. 2d Cir.1984). Culpepper's exception of no cause of action remains outstanding and facts including whether the sales taxes claimed were in fact due are in dispute.

CONCLUSION
We conclude that the fidelity bond written by plaintiff does cover the failure of an automobile dealership to remit sales taxes collected and due the State of Louisiana. Accordingly, we reverse the trial court's judgment that stated the bond did not cover unremitted sales taxes and only to that extent render a partial summary judgment in plaintiff's favor. However, because there exists outstanding motions and unresolved questions of material fact, such as what if anything was owed the state by the dealership, we remand this case to the trial court for a ruling on Culpepper's exception of no cause of action and for further proceedings consistent with this opinion. Costs to await the final disposition of this matter.

DECREE
REVERSED IN PART, PARTIAL SUMMARY JUDGMENT RENDERED, and REMANDED for further proceedings.
NOTES
[1] Under LSA-C.C.P. Art. 1841, we found the trial court's judgment to be in the nature of a final judgment, even though it is couched as the denial of a motion for summary judgment which ordinarily would be considered an interlocutory judgment. This problem is illustrated by considering what there is left to be tried, now that the trial court has made its ruling concerning AETNA's ability to recover on its claims. We found the case to be in the same posture as if the defendant had filed a peremptory exception of no cause of action and the trial court had sustained that exception.