792 So.2d 9 (2001)
James E. MORRISON and Malia L. Morrison
v.
ALLSTAR DODGE, INC. and Chrysler Corporation.
No. 2000 CA 0398.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
Rehearing Denied June 25, 2001.
*11 Robert L. Kleinpeter, Baton Rouge, LA, for plaintiffs-appellees, James E. Morrison and Malia L. Morrison.
E. Wade Shows and Carlos A. Romanach, Baton Rouge, LA, for defendant-appellant, Allstar Dodge, Inc.
BEFORE: FOGG, GUIDRY, and CLAIBORNE,[1] JJ.
CLAIBORNE, Judge.
In this suit concerning the sale of an allegedly defective vehicle, defendant, Allstar Dodge, Inc. (Allstar)[2] appeals a judgment in favor of the purchasers. For the following reasons, we amend in part and, as amended, affirm.

FACTS AND PROCEDURAL HISTORY
The facts in this case were basically uncontested by the parties. On March 28, 1997, Malia L. Morrison (Ms. Morrison), acting with the assistance of her father, James E. Morrison, purchased a 1996 Dodge Avenger ES from Allstar.[3] Aware of Ms. Morrison's desire to purchase a new car "for warranty purposes," Allstar represented the vehicle to be a new vehicle and sold it to Ms. Morrison for $24,025.22.
According to the evidence presented at trial, James Matthews, Ms. Morrison's boyfriend, noted problems with the vehicle beginning the morning after the sale. In lifting the hood, he noted that an extension wrench had been left inside the motor of the car. Upon attempting to remove the license plate from the front of the vehicle, he noted that a fog light was pushed in approximately six inches, the paint was cracked in the area of the blinker lights, and the fender wells were hanging loosely. He informed Ms. Morrison of his findings and they took the vehicle back to Allstar. Ms. Morrison questioned the salesman as to whether the vehicle had been previously damaged and/or repaired. At this time, Ms. Morrison learned that the vehicle had *12 been wrecked and/or damaged during a test drive prior to the sale.
On March 31, 1997, Ms. Morrison took the vehicle to Allstar to be repaired. On April 1, 1997, when she returned to Allstar to retrieve the vehicle, she discovered that the vehicle was being completely repainted. Ms. Morrison demanded a new vehicle that had not been previously damaged. Allstar refused to honor this request.
Subsequently, on April 6, 1997, Ms. Morrison encountered further mechanical difficulties when the alternator belt broke while she was driving the vehicle. As a result, Ms. Morrison had to have the vehicle towed to Allstar for repairs.
On June 6, 1997, the vehicle was returned to Allstar again when Ms. Morrison noticed a loud squealing noise coming from under the hood and smoke coming from inside the engine compartment. On June 11, 1997, James Matthews picked up the vehicle and noted that the squealing noise began again. Ms. Morrison learned that the vehicle had never been repaired. Employees of Allstar failed to inform Ms. Morrison that the vehicle had not been repaired because the necessary parts were on order.
On June 16, 1997, less than three months after the sale, Ms. Morrison met with Paul Landis of Allstar who examined and inspected the vehicle, viewed its condition, and admitted that the vehicle had been wrecked prior to the sale. At that time, Ms. Morrison again demanded a new car. Allstar again refused. Subsequent repairs were attempted, and on Friday, June 27th, the vehicle stopped running completely, making it necessary to have the vehicle towed to Allstar again. Upon completion of repairs on July 3, 1997, Ms. Morrison immediately noted that her horn and alarm system failed to work, and the whistling noise in the front of the vehicle, as well as the noise coming from the speaker area, had not been repaired.
The Morrisons instituted the instant suit in redhibition on July 17, 1997, against Allstar and the manufacturer of the vehicle, Chrysler Corporation.[4] The matter proceeded to trial on March 11, 1999.
At the time of trial, Ms. Morrison was still experiencing irritating and unpleasant noises, including the whistling sounds from wind coming through the doors as well as cracking and popping sounds from one of the speakers. Ms. Morrison drove the vehicle to and from New Orleans everyday (approximately 130 to 140 miles), and she had 40,230 miles on the vehicle as of the date of trial, March 11, 1999.
On August 20, 1999, the trial court issued written reasons finding Allstar in bad faith for failing to disclose the pre-sale damage to the buyers prior to sale of the vehicle. On November 19, 1999, the trial court rendered judgment in favor of the Morrisons and against Allstar, rescinding the sale of the Dodge Avenger and awarding damages in the amount of the full purchase price of $24,025.22. Further, the trial court awarded $6,870.70 in damages for finance charges, $143.64 in damages for expenses incidental to the sale, $3,628.00 for refund of insurance premiums paid, $2,500 in damages for inconvenience, and $7,500.00 in attorney's fees.
From this judgment, Allstar has appealed contending that the trial court erred in: 1) holding that La.R.S. 32:1260 did not apply; 2) denying Allstar's motion for involuntary dismissal; 3) awarding a refund of insurance premiums to plaintiff; 4) denying Allstar's alternative request for *13 credit for use; 5) awarding nonpecuniary damages to plaintiff; 6) finding Allstar in bad faith; 7) awarding excessive attorney's fees to plaintiff; and, 8) refusing to allow Allstar to introduce evidence of its compliance with La.R.S. 32:1260.

APPLICABILITY OF LA.R.S. 32:1260
Allstar asserts that the trial court erred in holding that La.R.S. 32:1260 did not apply in an action for redhibition. (La.Civ. Code arts. 2520 et seq.) This issue is res nova.
La.R.S. 32:1260 provides:
Whenever a new and unused motor vehicle is sold to any person, the seller shall notify the purchaser of any body damage or mechanical damage which the vehicle has sustained that exceeds six percent of the manufacturer's suggested retail price. Such notice shall be in writing and a copy thereof shall be delivered to the purchaser prior to or simultaneous with transfer of the vehicle title.
Allstar contends that under La.R.S. 32:1260, a seller of a new and unused vehicle is obligated to disclose in writing body damage or mechanical damage to a new and unused vehicle when that damage exceeds six percent of the manufacturer's suggested retail price (MSRP). If the damage is six percent or less, the seller owes no such duty to disclose. Allstar argues that the plaintiffs failed to prove that the pre-sale damage to the vehicle in question exceeded six percent of the MSRP and thus, did not prove all essential elements of their redhibition claim.
The Morrisons argue that La.R.S. 32:1260 is part and parcel of the regulations administered by the Louisiana Motor Vehicle Commission and has nothing to do with sales. They contend that La.R.S. 32:1260 is inapplicable in an action in redhibition, and if it could apply, La.R.S. 32:1260 is an affirmative defense which had to be specifically pleaded and not raised in a post-trial memorandum.
The trial court held, and we agree, that La.R.S. 32:1260 is not applicable in a claim for redhibition. "The Louisiana Motor Vehicle Commission Law, La.R.S. 32:1251, et seq., has for its purpose the regulation of the distribution and sale of motor vehicles in the state. La. Motor Veh. Comm. v. Wheeling Frenchman, 235 La. 332, 337, 103 So.2d 464, 466 (1958). The statutes regulate the distribution and sale of motor vehicles by setting forth licensing procedures with which motor vehicle dealers must comply. Aetna Cas. & Sur. Co. v. Lively-Culpepper Chevrolet Oldsmobile, Inc., 609 So.2d 1055, 1058 (La.App. 2nd Cir.1992)." La.R.S. 32:1260 establishes an affirmative duty of an automobile dealer to disclose damage to a prospective buyer on penalty originally of criminal prosecution, and now of civil penalty and delicensing. If the damages had in fact exceeded six percent of the MSRP without written notice to the buyer, presumably Allstar would be subject to serious sanctions including the possible suspension or revocation of its dealer's license. See, La.R.S. 32:1255. La.R.S. 32: 1260 does not govern the issue of good faith disclosure in a contract of sale. Thus, we do not find error in the trial court's ruling that La.R.S. 32:1260 does not affect the seller's duty to disclose in considering whether a sale may be rescinded for redhibitory defects. Nor do we find the trial court erred in refusing to allow Allstar to introduce evidence relevant only to its compliance with La.R.S. 32:1260.

REDHIBITION
The existence of a redhibitory defect is a question of fact, which cannot be disturbed on appeal unless the record as a whole establishes that the finding is *14 manifestly erroneous or clearly wrong. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127, 1131 (La.App. 1st Cir.1992.) Similarly, the avoidance of a sale as a remedy for defects in a product is a factual question, the resolution of which is best left to the trier of fact. Vincent v. Hyundai Corp., 633 So.2d 240, 243 (La.App. 1st Cir.1993), writ denied, 93-3118 (La.2/11/94), 634 So.2d 832. A court of appeal may not set aside a fact-finder's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Before an appellate court may reverse a fact-finder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong (manifestly erroneous). Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. La.Civ.Code art. 2520. In a suit for redhibition, the plaintiff must prove: 1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; 2) the thing contained a non-apparent defect at the time of sale; and, 3) the seller was given an opportunity to repair the defect. McNeely v. Ford Motor Co., Inc., 98-2139, p. 15 (La. App. 1st Cir.12/28/99), 763 So.2d 659, 669, writ denied, XXXX-XXXX (La.4/28/00), 760 So.2d 1182.
In Louisiana, sellers are bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the buyer's intended use. Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La. 1992). La.Civ.Code art. 2521 provides that apparent defects are those defects which the buyer might have discovered by simple inspection and that apparent defects are not among the number of redhibitory vices. Hidden defects are those which cannot be discovered by simple inspection. Landaiche, 602 So.2d at 1130-1131. To determine whether a defect is apparent upon simple inspection, the courts have questioned whether a reasonably prudent buyer acting under similar circumstances would have discovered the presence of the defect. Landaiche, 602 So.2d at 1131. Whether an inspection is reasonable depends upon the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller. McMorris v. Marcotte Builders, L.L.C., 98-2302, p. 5 (La.App. 1st Cir. 12/28/99), 756 So.2d 424, 428, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 1158.
A buyer of an automobile who asserts a redhibition claim need not show the particular cause of the defects making the vehicle unfit for the intended purposes, but rather must simply prove the actual existence of such defects. Young, 595 So.2d at 1126. A defect is presumed to have existed before the sale if it manifests itself within three days immediately following the sale. La.Civ.Code art. 2530. Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. Young, 595 So.2d at 1126. In situations where new vehicles present such defects as would render their use inconvenient and imperfect to the extent that the buyer would not have purchased *15 the automobile had he or she known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the price. Davidson v. New Roads Motor Co., Inc., 385 So.2d 319 (La.App. 1st Cir.), writ denied, 391 So.2d 454 (La.1980).
An action in redhibition also lies if the seller knows that the thing sold has a defect but omits to declare it. La.Civ. Code art. 2545. A declaration that the thing sold has some quality which it is found not to have can also give rise to redhibition if this quality was the principal motive for making the purchase. La.Civ. Code arts. 2529 and 2545; Landaiche, 602 So.2d at 1131.
Although minor defects alone do not constitute redhibitory defects, in our view, the multiple defects shown in this case rendered the use of the car so inconvenient and imperfect that any reasonable person would not have purchased the vehicle had he known of the vice. It is undisputed that the problems with the vehicle began almost immediately. Ms. Morrison testified that she initially discovered problems the day after the purchase, at which time she spoke to the salesperson and requested a new and unused vehicle as bargained for. The record reasonably supports the trial court's finding that had Ms. Morrison known that the vehicle in question had been wrecked and received almost $1,000.00 in damage, she would not have purchased the vehicle. Therefore, we cannot say that the trial court was manifestly erroneous or clearly wrong in rescinding the sale.

Involuntary Dismissal
Allstar contends that the trial court erred in denying Allstar's motion for involuntary dismissal. In light of our determination that the trial court did not err in finding that Ms. Morrison was entitled to have the sale rescinded, we find it unnecessary to address the trial court's denial of Allstar's motion for involuntary dismissal.

Liability as a Bad Faith Seller
Allstar contends that the trial court erred in finding it in bad faith for failing to disclose the pre-sale damage to the vehicle in question. We disagree. Under La.Civ.Code art. 2545, when a seller knows the vice of the thing which he sells, and omits to declare it, he is a bad faith seller. The evidence presented at trial case supports a finding that Allstar acted in bad faith. Allstar had actual knowledge of the prior damage to the vehicle and failed to inform Ms. Morrison at the time of sale. Furthermore, Allstar attempted to repair the pre-sale damage to the vehicle and never informed Ms. Morrison that the car, which was presented as new and unused, had been damaged and repaired. Therefore, we find no error in the trial court's finding that Allstar acted in bad faith.

Attorney's Fees
Allstar further argues that the Morrisons are not entitled to attorney's fees because they failed to prove bad faith on the part of Allstar. Alternatively, Allstar argues that the trial court's award of $7,500.00 in attorney's fees was unreasonable.
As previously mentioned, La.Civ.Code art. 2545[5] provides, in pertinent part:
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned *16 by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. (Emphasis added.)
The statute expressly provides for recovery of reasonable attorney's fees when a seller is found to have acted in bad faith. Therefore, in light of our finding that Allstar was a bad faith seller by failing to disclose the pre-sale damage and attempted repair of the purportedly new and unused vehicle, we find that an award of reasonable attorney's fees is proper under La.Civ.Code art. 2545.
As to the amount of attorney fees awarded, we turn to Fly v. Allstar Ford Lincoln Mercury, Inc., 95-1216, p. 9 (La. App. 1st Cir.8/21/96), 690 So.2d 759, 764-765, where this court enumerated several factors to be considered in determining the award of attorney's fees. These factors included, the degree of professional skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the time devoted to the case. During the course of the trial, the Morrisons' attorney, Robert L. Kleinpeter, introduced into evidence a statement indicating that he spent 28.75 hours handling the case up to the date of trial. The statement also showed $748.58 in expenses incurred in the litigation. The trial court, in its written reasons, noted, "Mr. Kleinpeter has spent a great deal of time on the case, and as of trial had expended $748.58 in out-of-pocket costs, together with 28.75 hours prior to trial. He has been required to try the case, file extensive post trial memoranda, and has expended at least 40 hours related to this matter." Under the circumstances of this case, we find no abuse of the trial court's discretion in awarding $7,500.00 in attorney's fees.

ADDITIONAL AWARDS
Generally, the amount of damages a plaintiff can recover depends upon the type of seller involved. Under La.Civ. Code art. 2531, a good faith seller, namely one who knew not of the vices in the thing he sold, is required to repair, remedy, or correct the vices or defects in the property which he sold. If he is unable to do so, he must restore the purchase price and reimburse the reasonable expenses occasioned by the sale and those expenses incurred for the preservation of the property. La. Civ.Code art. 2531; Landaiche v. Supreme Chevrolet, Inc., 602 So.2d at 1132. La.Civ. Code art. 2545 provides that the seller who knows the vice of the thing which he sells and omits to declare it is answerable to the buyer in damages. Besides restitution of the price and repayment of expenses, including reasonable attorney's fees, the bad faith seller is also answerable for other damages. La.Civ.Code art. 2545.

Credit for Use
Reasoning that Ms. Morrison's use of the vehicle was only a result of Allstar's refusal to replace the vehicle, and that such use has been very inconvenient to Ms. Morrison, the trial court held that Allstar was not entitled to any credit for Ms. Morrison's use of the vehicle. Allstar contends that the trial court committed manifest error in refusing to grant Allstar a credit for Ms. Morrison's use of the vehicle.
Under Louisiana law, both the good faith and bad faith seller are entitled to a credit for the buyer's use if the buyer reaped a benefit from that use. La.Civ. Code arts. 2531, 2545. There is no established rule for the calculation of credit for use. Chenniliaro v. Kaufman & Broad Home Systems of Louisiana, Inc., 93-1126, p. 11 (La.App. 1st Cir.1/19/94), 636 So.2d 246, 253. However, in Capitol City Leasing Corp. v. Hill, 404 So.2d 935, 939 (La.1981), our supreme court held:
Compensation for the buyer's use, however, ought not be granted automatically *17 by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair.
Capitol City Leasing Corp., 404 So.2d at 939, quoting Alexander v. Burroughs Corp., 359 So.2d 607, 610-611 (La.1978).
In the instant case, we agree with the trial judge in noting that although Ms. Morrison used the vehicle, she did so only because Allstar failed to accept her tender of the vehicle, and because it was the only vehicle to which she had access. However, this use was found to be very inconvenient for Ms. Morrison. Ms. Morrison bargained for and thought she was purchasing a new vehicle and, in reality, received a wrecked vehicle with numerous defects and problems. On the day following the purchase, Ms. Morrison began to notice defects in the vehicle. The defects began with a misaligned fog light and escalated to mechanical breakdowns, leaving Ms. Morrison stranded on several occasions. The record clearly supports a finding that Ms. Morrison's use and enjoyment of the vehicle were substantially outweighed by the inconvenience of the numerous defects in the vehicle, some of which still existed at the time of trial. Therefore, we find no error in the trial court's refusal to award Allstar credit for Ms. Morrison's use of the vehicle.

Nonpecuniary Damages
Allstar challenges the trial court's award of $2,500.00 in nonpecuniary damages for inconvenience.
Damages recoverable under La. Civ.Code art. 2545 may, under proper circumstances, include nonpecuniary damages for mental anguish, aggravation and inconvenience. Ducote v. Perry's Auto World, Inc., 98-1972 (La.App. 1st Cir. 1999); 745 So.2d 229. The Louisiana Supreme Court has held that "recovery of nonpecuniary loss can be had in cases of redhibition, provided the obligee shows that he intended to gratify a significant nonpecuniary interest by way of the purchase; that the nature of the contract supports this contention; and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee." McGough v. Oakwood Mobile Homes, Inc., 34,091, p. 15 (La.App. 2nd 11/1/00), 779 So.2d 793, 803, citing Young, 595 So.2d at 1133.
The nature of the contract in this case does not indicate, nor do the facts and circumstances surrounding the purchase of the vehicle demonstrate that the vehicle was purchased for a significant nonpecuniary use. Ms. Morrison testified that she wanted a brand new car for "warranty" reasons. She stated that her motivation in purchasing the vehicle was that she needed something reliable and dependable to transport her children back and forth from daycare and herself to and from work. There is no evidence in the record to establish that the vehicle was purchased for a significant nonpecuniary reason. Ms. Morrison failed in her burden of proving gratification of a significant nonpecuniary interest. Accordingly, an award of nonpecuniary damages for inconvenience was inappropriate.[6]

Insurance Costs
Allstar further argues that the trial court erred in awarding reimbursement of insurance premiums paid by Ms. Morrison. Allstar contends that Ms. Morrison *18 failed to specify which portion of the premiums was for collision and comprehensive coverage. Allstar cites the Third Circuit case of Carpenter v. Lafayette Woodworks, Inc., 94-1011, (La.App. 3rd Cir.2/1/95), 653 So.2d 1187 for the proposition that only those insurance expenses which are "incurred for the preservation of the thing" are subject to restoration by the seller. However, in Holloway v. Gulf Motors, Inc., 588 So.2d 1322, 1328 (La.App. 2d Cir.1991), the Second Circuit held that insurance premiums are recoverable as being "occasioned by the sale." In Holloway, the premiums relating to liability insurance were recoverable as occasioned by the sale because "motor vehicle insurance is now compulsory." Holloway, 588 So.2d at 1328. La.Civ.Code art. 2545 allows recovery of reasonable expenses occasioned by the sale, as well as those incurred in preservation of the thing. Therefore, we find no error in the trial court's awarding Ms. Morrison's liability insurance premiums, as expenses occasioned by the sale, and collision insurance premiums, as expenses incurred for the preservation of the thing.

CONCLUSION
For the foregoing reasons, the portion of the judgment awarding damages of $2,500 for inconvenience is vacated and set aside. In all other respects, the judgment of the trial court is affirmed. Costs are to be borne equally by the parties.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro-tempore by special appointment of the Louisiana Supreme Court.
[2] In the record, Allstar Dodge, Inc. is referred to as "Allstar" and "All Star." For the purposes of this opinion, we will refer to the defendant as "Allstar."
[3] James E. Morrison assisted Ms. Morrison in obtaining financing for the vehicle by co-signing the loan by Allstar. The loan was subsequently transferred or sold to City National Bank (now BankOne).
[4] Upon the trial court's granting of its motion for involuntary dismissal, Chrysler was released from the suit. There is no appeal from this ruling.
[5] See also La.Civ.Code arts. 1953 and 1958.
[6] Pecuniary damages resulting from taking eight days off from work, and any expenses in connection with any substitute transportation were also not proven.