909 So.2d 686 (2005)
Skylar A. STUCK, Plaintiff-Appellant
v.
Dr. Warren LONG, XYZ Insurance Company, European Cars Centre, Inc., Norbert K. Przybilla and ABC Ins. Company, Defendant-Appellee.
No. 40,034-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
*688 Herman, Herman, Katz & Cotlar, by Brian D. Katz, New Orleans, for Appellant.
Robert U. Goodman, Shreveport, for Appellee.
Before BROWN, CARAWAY and MOORE, JJ.
MOORE, J.
Skylar Stuck appeals a judgment that refused to rescind his purchase of a 1968 Mercedes Benz 250SL from Dr. Warren Long. Finding that the latent defects discovered by Stuck after the purchase are indeed redhibitory, we reverse and render.

Factual Background
Stuck is a resident of San Luis Obispo, California, and works for a winery in Paso Robles. In the spring of 2002 he was in the market for an older-model Porsche or Mercedes suitable for his daily commute. He consulted a classified auto website, www.thebiglot.com, looking only for cars with eye appeal, low mileage on a rebuilt engine, and "ready to drive" without the need for major repairs. He noticed a listing for a blue 1968 250SL hard/soft top convertible for "$18,000 OBO" with the following details:
History:
Clean  Garage Kept  Excellent Condition  Non-Smoker
Comments:

*689 Same Owner since 1968; Black Soft Top; White Hard Top; Complete Restoration 3 Years ago; Newer Tires; Very Well Maintained and Cared For; A True Collectors Car!
Stuck testified that he e-mailed the owner, Dr. Long, and phoned him in late August. According to Stuck, Dr. Long told him the car was in "great shape," had been completely rebuilt, and would go 70-80 mph "throughout the west coast and southwest"; he admitted there were minor rust issues, and the cracked plastic rear window would have to be replaced. Stuck asked if he could call Dr. Long's mechanic; Dr. Long referred him to Norbert Przybilla at European Cars Centré on East Kings Hwy. in Shreveport. In a brief conversation, Norbert gave Stuck no indication that the car had any major problems.
Stuck called back Dr. Long and offered him $16,000; he testified that they settled on $17,000. Stuck mailed Dr. Long a check for $500 earnest money and wired the balance to Dr. Long's account a few days before he flew to Shreveport on October 2 to get the car.
Dr. Long's wife picked up Stuck at the airport and let him take the car out for a short test drive. Stuck drove it around the block and found it was running rough, making a grinding sound between first and second gears; however, he thought this would require only a "minor adjustment" from his mechanic in California. When Dr. Long arrived, they opened the hood, but Stuck is not mechanically inclined and had no idea what to look for. Because Dr. Long and Norbert had both assured him the car was in excellent running condition, Stuck felt no need to take it to another mechanic. Stuck also testified that he had already paid for the car and was not sure he could back out of the sale.
According to plan, Stuck drove the car from Shreveport to Dallas, noticing a lot of engine noise and play in the steering. He then had the car shipped to San Luis Obispo, where he took it to his mechanic, Michael Green.
Green wrote a detailed inspection report, finding a multitude of problems and concluding, "In our opinion vehicle is unsafe to drive [and] needs immediate attention." He catalogued 34 items needing repair, the most serious being the outer tie rod inner ends which were dangerously loose; this made for treacherous "play" in the steering. Other major problems included a leaking fuel pump, creating a fire hazard; a non-factory exhaust system that was improperly installed; radiator fins falling out of the core; and subframe mounts in "very bad" condition. Finally, Green noticed rust and corrosion completely through the monocock body and rear suspension anchors, so severe that if the car hit a bad bump, the passenger seat could fall through the floor. A body shop estimated that rust repairs would cost $6,912.35. While Green did not prepare an estimate for the other repairs, he stated in deposition that the minimal cost to get the car roadworthy would be $3,000-$5,000. He also stated that the car was not in "excellent" or even "good" condition, and most likely it had not been "completely restored" three years earlier.
In late November, Stuck faxed a letter to Dr. Long outlining these numerous problems, demanding a return of the purchase price plus his expenses. Dr. Long did not respond.
Stuck filed this suit in February 2003 to rescind the sale. He named as defendants Dr. Long, European Cars Centré and its mechanic, Norbert Przybilla, and their respective insurers. European Cars Centré moved for summary judgment on grounds that it had no pecuniary interest in the transaction and made no false representations *690 about the car. On the morning of trial, the district court granted this motion and orally dismissed Norbert on the same grounds.

Summary of Trial Testimony
At trial in January 2004, Dr. Long confirmed that he bought the car in August 1969 and, recently, had paid for a lot of work on it. He admitted his daughter had actually written the ad, as the 70-year-old Dr. Long has no computer at home. Contrary to the text of the ad, the car had been outdoors from 1984 to 1994 at a mechanic's place on Cross Lake while he decided what to do with it, and the car flooded during this time, but none of this was disclosed to Stuck prior to the sale. In June 1994, Dr. Long got another mechanic, Charlie Jones, to install an engine from a donor car at a cost of $15,000, and repair rust damage for about $2,700. Between 1998 and 2002, he got his current mechanic, Norbert, to put in a "new used motor," rear axle and fuel pump. Dr. Long insisted that he told Stuck, "We're selling this car the way it sits right here in the driveway," but admitted that neither the online ad nor the bill of sale specified any waiver of warranty. Dr. Long testified he did not even know what redhibition was until he was served with Stuck's petition.
Charlie Jones, Dr. Long's mechanic from 1994 to 1998, corroborated that he installed an engine, transmission, radiator and exhaust system from the donor car in 1994, and sent the car to a body shop for rust repair in 1996. Some of the rust damage, he testified, could not be repaired. He did not consider this work a "complete restoration." In 1997, the engine installed just three years earlier blew a head gasket; Dr. Long balked at paying the $8,000 needed to repair it. In July 1998, Dr. Long took the car back, unrepaired and undrivable.
Norbert Przybilla testified that in July 1998 he put a "new used motor" in the car for $5,140; in March 2002 he replaced the left upper control arm and the fuel pump. He also discovered that the left tie rod had excess play and needed to be replaced, but testified this was not a necessary repair. He remembered getting calls from prospective buyers of this car, but did not recall talking to Stuck specifically. He insisted that as of March 2002 the car was not dangerous to drive, but admitted that if it had many of the problems identified by Michael Green, the mechanic in California, these would not have been apparent to Dr. Long.

Action of the District Court
By findings of fact and conclusions of law rendered in August 2004, the district court quoted the law of redhibition, notably La. C.C. art. 2521: "The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." (Emphasis added.)
The court found the car was in "far from perfect shape" and that Dr. Long's representations in the online ad were "just his opinionsperhaps not unexpectedly biased opinions." Nonetheless, Stuck decided to buy the car "without personally seeing the vehicle or having the vehicle examined." Noting the testimony of Michael Green, Stuck's mechanic in California, the court found, "more probably than not, if the plaintiff had bothered to have the vehicle inspected, even cursorily, by a mechanic, all of the problems would have been apparent." Further, this classic 34-year-old car was an item for a collector who values it "and is charged with the liability for any and all `defects' that are apparent to a reasonably prudent buyer." Finally, these defects "would have been apparent to the reasonably prudent buyer of a 34-year-old *691 vehicle," so Stuck should have had the car inspected before, not after, the sale. The court dismissed Stuck's claims.

The Parties' Contentions
By one assignment of error, Stuck urges the district court erred by requiring a vehicle inspection prior to purchase. Instead, he contends, the buyer is required only to make a "simple inspection" of the thing he bought. Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963); Matthews v. Calamari, 411 So.2d 620 (La.App. 4 Cir.1982). He cites no cases involving the sale of automobiles, but shows that homebuyers have obtained reductions in the purchase price because of rotten flooring and a clogged septic tank line, defects that could have been discovered by presale inspection. Kolwe v. Owens, 357 So.2d 1333 (La.App. 4 Cir.1978); Guillory v. Sarpy, 177 So.2d 403 (La.App. 4 Cir.1965). He contends that he had minimal expertise in buying classic cars and limited opportunity to inspect this one, but above all, the glowing assurances of Dr. Long and his mechanic, Norbert, made it reasonable for him to forgo a formal inspection. McMorris v. Marcotte Bldrs. LLC, 98-2302 (La.App. 1 Cir. 12/28/99), 756 So.2d 424, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 1158. He submits that of the 34 repair issues identified by the mechanic in California, 15 were completely latent to the average buyer.
Stuck also argues that the district court applied the wrong legal standard, entitling him to de novo review. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731. He requests rescission of the sale, restoration of the purchase price of $17,000, garage costs of $100 a month as expenses of the sale, general damages of $5,000 for his inconvenience, and attorney fees of $11,000, including the appeal.
Dr. Long responds that the court's findings are factual in nature and subject to manifest error review. Rosell v. ESCO, 549 So.2d 840 (La.1989); Morrison v. Allstar Dodge Inc., XXXX-XXXX (La.App. 1 Cir. 5/11/01, 792 So.2d 9), writ denied, 2001-2129 (La.11/2/01), 800 So.2d 878. He concedes that the thing sold must be reasonably fit for its ordinary use, La. C.C. art. 2524, but urges that the ordinary use of a vintage Mercedes is not mere transportation. He also contends that Stuck, with a Masters degree from Johns Hopkins University, was indeed a sophisticated buyer. Finally, he argues that Stuck successfully drove the car from Shreveport to Dallas, proving that the litany of defects did not render it totally useless. He concludes that the court's findings are not plainly wrong and should be affirmed.

Applicable Law
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. La. C.C. art. 2520. The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things. La. C.C. art. 2521.
To determine whether a defect is apparent, courts consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the thing sold. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness. Amend v. McCabe, 95-0316 (La.12/1/95), 664 So.2d 1183; Morrison v. Allstar Dodge, supra. *692 Whether an inspection is reasonable depends on the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller. Morrison v. Allstar Dodge, supra; McMorris v. Marcotte Bldrs., supra.
The buyer of an automobile who asserts a redhibition claim need not show the particular cause of the defects making the vehicle unfit for the intended purposes, but rather must simply prove the actual existence of such defects. Young v. Ford Motor Co., 91-0561 (La.3/2/92), 595 So.2d 1123. In general, the intended purpose of an automobile is transportation. Guillory v. Morein Motor Co., 322 So.2d 375 (La.App. 3 Cir.1975). Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. Id.; Berney v. Rountree Olds-Cadillac Co., 33,388 (La.App. 2 Cir. 6/21/00), 763 So.2d 799. In an action for rescission because of a redhibitory defect, the court may limit the remedy of the buyer to a reduction of the price. La. C.C. art. 2541; Berney v. Rountree Olds-Cadillac Co., supra.
A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. La. C.C. art. 2531. Such a seller is called a "good faith seller"; if he is unable to repair, remedy or correct, then he must restore the purchase price with interest from the time it was paid, and reimburse (1) the reasonable expenses occasioned by the sale and (2) costs incurred for preserving the thing. Id.; Morrison v. Allstar Dodge, supra.

Discussion
At the outset, Stuck contends that the district court committed legal error in requiring a presale inspection by a mechanic, thus entitling him to de novo review. However, the finding of a redhibitory defect is a question of fact and will not be disturbed unless it is plainly wrong. Ollis v. Miller, 39,098 (La.App. 2 Cir. 10/29/04), 886 So.2d 1199; Morrison v. Allstar Dodge, supra. The standard of review is manifest error.
The district court found the car was in "far from perfect shape" but did not state whether its problems were redhibitory. We have closely reviewed this record, especially the video deposition of Michael Green, the mechanic in California. In this tape, Green walks around the car, opens the hood and raises the vehicle on a rack, all to indicate and explain the defects listed in his report. The outer tie rod ends, king and link pins, radiator fins and subframe mounts are difficult (if not impossible) to see, even under a strong flashlight and pointed out with a pen. The rust and corrosion at the rear suspension anchors and under the right seat are somewhat more apparent, but come into view only when the vehicle is on the rack. Simply put, these defects are perfectly latent and could not be discerned by simple inspection of the Mercedes.
These problems, moreover, are far more serious than the district court acknowledged. Green testified that the "dangerously loose" tie rods, as well as the loose king and link pins, impaired steering control and wheel motion, making the car hazardous to drive. He also testified that the radiator posed a risk of burning out the engine, and that the transmission leaked profusely. He incisively described rust and corrosion so advanced that the passenger seat could fall through the floor of the car. Norbert was equivocal about the tie rods, stating in deposition they were "way out" but testifying at trial they were not a necessary repair; he admitted *693 the transmission needed significant work, but he does not repair transmissions. He did not comment on the rust and corrosion, as he does not perform body work either.
The district court was plainly wrong not to find these conditions redhibitory. It is difficult to imagine defects that would make the use of this car more inconvenient. In the aggregate, they are redhibitory.
The crux of the case is whether Stuck was required, as a reasonably prudent buyer, to have the car inspected by a mechanic before he bought it. The district court found that Stuck was charged with finding any and all defects that are apparent to a reasonable prudent buyer. As noted, the reasonableness of the buyer's simple inspection depends on the facts of the case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller. Morrison v. Allstar Dodge, supra. Dr. Long urges that Stuck was educated and sophisticated enough to seek a collectible car, and should have known to hire a mechanic before the sale. This would have been prudent, but in the analogous situation of real estate purchases, homebuyers are not required to hire specialists to detect rotted floors and clogged sewer lines. Kolwe v. Owens, supra; Guillory v. Sarpy, supra. The factor of the buyer's expertise is neutral.
There is no showing that Dr. Long denied or would have denied Stuck the opportunity to take the car to a mechanic in Shreveport. However, Stuck had remitted, and Dr. Long had accepted, full payment before Stuck arrived to take delivery. Stuck doubted he could pull out of the deal after the price was paid, and Dr. Long was adamant the sale was "as is." While it would have been prudent for Stuck to get the car inspected before buying it essentially online, both parties benefitted equally from the computer-age convenience of shopping across long distances and paying instantly. Under these special circumstances, the factor of opportunity to inspect is also largely neutral.[1]
Dr. Long's online ad declared the car was in "excellent condition" with "complete restoration" three years earlier, and "very well maintained and cared for." According to Stuck, Dr. Long told him the car was in "great shape," would drive at Interstate speeds, and needed only cosmetic repairs. Stuck also testified that Norbert did not advise him of any major problems with the car. Notably, Dr. Long and Norbert recalled no details of their presale discussions with Stuck. Given Stuck's unrefuted account of these conversations and the text of the online ad, Stuck was warranted in thinking an inspection by a mechanic was not necessary.
In addition to the three factors of Morrison v. Allstar Dodge, supra, we find it significant that many of the defects were truly latent, requiring a very detailed inspection, and major, making the car almost useless for driving. On these facts, the district court was plainly wrong to find that Stuck's duty of "simple inspection" encompassed finding any and all defects before taking delivery of the car. The judgment will be reversed.
Having found the car suffers from redhibitory defects, we must address the measure of relief. The buyer may rescind the sale if the thing is totally useless or its use "so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." La. C.C. art. 2520. Also, the buyer's recovery *694 may be limited to a reduction of the purchase price. La. C.C. art. 2541. This Mercedes is not totally useless, as Stuck managed to drive it the 200 miles or so from Shreveport to Dallas, and it has potential for restoration. However, Stuck's mechanic recommended not driving the car over 200 miles. The defective steering, the major rust problem, and the host of defects in other critical operating systems plainly make the use of this car unduly inconvenient. Moreover, the estimate to repair the rust damage was $6,912.35. As for the mechanical repairs, Norbert offered conservative estimates totaling about $1,140, while Green projected $3,000-$5,000 of work was needed for "minimal driving." The prospect of spending nearly $12,000 for repairs to a car that cost $17,000 and was advertised as in "excellent" condition is certainly the type of inconvenience that warrants a rescission of the sale. Judgment will be entered accordingly.
Although this Mercedes was laden with redhibitory defects, the record does not show Dr. Long was aware of these and omitted to declare them. Like Stuck, Dr. Long had no special expertise in auto mechanics and maintenance; having spent nearly $25,000 on repairs over an eight-year period, he sincerely believed the car was adequately restored. At trial, Norbert minimized the remaining problems, and it is likely he conveyed the same rosy assessment to Dr. Long. Finally, Stuck admitted that Dr. Long orally disclosed minor rust issues and the cracked rear window, which had not appeared in the online ad. These facts show Dr. Long was a good faith seller.
As a good faith seller, Dr. Long is not liable for attorney fees, but only for the return of the purchase price with interest from the date it was paid, with reasonable expenses occasioned by the sale and incurred in the preservation of the thing sold. La. C.C. art. 2531. Stuck testified without contradiction that he paid $1,500 to transport the car to California; a like amount will be required to return the car to Shreveport. Stuck also testified that he is paying $100 a month in garage fees; a reasonable amount through the date of this judgment will be $3,500. Judgment will be rendered accordingly.

Decree
For the reasons expressed, the judgment of the district court is reversed and set aside. Judgment is rendered in favor of the plaintiff, Skylar A. Stuck, against the defendant, Dr. Warren Long, in the sum of $17,000.00, with legal interest thereon from the date of purchase until paid; in the sum of $3,000.00 for transportation of the car; in the sum of $3,500 for garage expenses; and for all costs of this proceeding, payable upon the return of the 1968 Mercedes Benz 250SL to Dr. Long.
REVERSED AND RENDERED.
NOTES
[1] The parties have not urged that thebiglot.com imposes, as a condition of its use, any obligations on sellers or buyers of the vehicles listed therein.