996 So.2d 471 (2008)
Vicki FRYER, Brenda McGee, Charles Parker and Carol Parker, Plaintiffs-Appellees
v.
TAYLOR RENTAL PROPERTIES, INC., Fred Namer Kalil, III and Melanie McGraw Kalil, Defendants-Appellants.
No. 43,354-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 2008.
*472 Michael Lee Dubos, Monroe, for Appellants, Fred Namer Kalil, III and Melanie McGraw Kalil.
William H. Hallack, Jr., Dennis W. Hallack, West Monroe, for Appellees, Randal Taylor and Taylor Rental Properties, Inc.
Caroline Hemphill, for Appellees, Vicki Fryer, Brenda McGee, Charles Parker and Carol Parker.
Before WILLIAMS, STEWART and LOLLEY, JJ.
WILLIAMS, J.
Fred and Melanie Kalil, the purchasers of an apartment complex in West Monroe, appeal a trial court judgment dismissing their redhibition claims against the seller, Taylor Rental Properties, Inc., and its principal, Randall Taylor. For the following reasons, we affirm the trial court's judgment.

FACTS
The original plaintiffs in this action, Vicki Fryer, Brenda McGee, Charles Parker and Carol Parker, were the owners of condominiums in West Monroe, Louisiana. The defendant, Taylor Rental Properties, Inc., owned by its principal, Randall Taylor (collectively "Taylor"), is a company that develops, owns and manages residential properties. In 2005, Taylor purchased a parcel of property on Wallace Road in West Monroe to build an apartment complex. The purchased property was located to the east of the original plaintiffs' property.
During the construction of the apartment complex, Taylor brought in truckloads of dirt to elevate a portion of the property. The southern portion of the property was elevated approximately three feet, while the northern side was raised approximately thirteen feet. When it rained, the elevation caused the original plaintiffs' backyards to flood and incur sedimentation problems. The plaintiffs complained to Taylor, and he had his employees remove the sediment from their property. Taylor assured the property owners that the problems would resolve once the construction was completed.
When the flooding and sedimentation problems persisted, Taylor erected a wooden retaining wall to hold the elevation in place. Taylor reinforced the retaining wall by packing dirt around it and holding the dirt in place with large rocks ("rip-rap"). Unbeknownst to Taylor, the retaining wall and rip-rap encroached approximately one to three feet onto a 15-foot utility and drainage servitude that burdened the property of the condominium owners.
On August 1, 2005, Taylor sold the property to Fred and Melanie Kalil ("the Kalils") *473 for $750,000. Prior to the sale, Fred Kalil ("Kalil") performed a visual inspection of the property. However, at trial, he denied being aware of the flooding problems and encroachment. Within months of the sale, the Kalils began receiving complaints from the property owners with regard to the continued flooding and sedimentation. Kalil contacted Taylor, who acknowledged a history of problems with the property owners.
The Kalils hired Dr. Dixie Griffin, an engineer, to inspect the property and identify possible solutions. Dr. Griffin opined that the drainage servitude had been obstructed by the dirt and rip-rap, resulting in the flooding and other problems. Based upon Dr. Griffin's recommendation, the Kalils placed sandbags along the property owners' back fence to channel water along its natural course and to prevent flooding. The Kalils also hired another engineer, Mark Thomey, to inspect the retaining wall.
On April 19, 2006, the original plaintiffs filed suit against Taylor and the Kalils, seeking injunctive relief and damages for trespass due to the encroachment by the retaining wall, dirt and rip-rap. The trial court granted the preliminary injunction and ordered the Kalils to "take effective measures, including monitoring the effectiveness of the sandbags that have been put in place to determine whether or not the sandbags arrest the [property owners] from suffering further damage...." The Kalils engaged Dr. Griffin to monitor the sandbags during periods of rainfall and routinely removed the sediment that accumulated against the sandbags. Taylor and the original plaintiffs settled their dispute by Taylor agreeing to buy the condominiums owned by the original plaintiffs. Thereafter, the original plaintiffs' claims against Taylor and the Kalils were dismissed.[1]
On July 26, 2006, the Kalils filed a cross-claim and third party demand against Taylor, seeking a rescission of the sale of the apartment complex and damages, or alternatively, damages in an amount sufficient to remove the encroachment and restore the servitude. The trial court ruled in favor of Taylor, dismissing the Kalils' claims. This appeal ensued.

DISCUSSION
The Kalils contend the flooding of the neighboring properties and the encroachment caused by the retaining wall constitute redhibitory defects. They argue that they purchased the property unaware of the encroachment and flooding issues and would not have purchased the property had they known.
LSA-C.C. art. 2520 provides:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price.
The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale or for defects that should have been discovered by a reasonably prudent buyer of such things. LSA-C.C. art. 2521. The standard of diligence that must be exercised by the buyer in determining whether the thing purchased *474 is defective is that of a prudent administrator. LSA-C.C. art. 2521, Official Revision Comment (c).
To determine whether a defect is apparent, courts consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the thing sold. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness. LSA-C.C. art. 2521, Official Revision Comment (d); Stuck v. Long, 40,034 (La.App. 2d Cir.8/17/05), 909 So.2d 686, writ denied, 2005-2367 (La.3/17/06), 925 So.2d 546, citing Amend v. McCabe, 95-0316 (La.12/1/95), 664 So.2d 1183. Whether an inspection is reasonable depends on the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection and the assurances made by the seller. Stuck, supra; Morrison v. Allstar Dodge Inc., XXXX-XXXX (La.App. 1st Cir.5/11/01), 792 So.2d 9, writ denied, 2001-2129 (La.11/2/01), 800 So.2d 878. If the defect is apparent and could have been discovered by simple inspection, a plaintiff has a duty to make a further investigation. A failure to do so waives the right to sue in quanti minoris. Dage v. Obed, 40,414 (La. App. 2d Cir.12/14/05), 917 So.2d 713.
The existence of a redhibitory defect is a question of fact which cannot be disturbed unless the record establishes that the finding is manifestly erroneous. Fisher v. Batista, 42,642 (La.App. 2d Cir.10/24/07), 968 So.2d 337; Dage, supra. Similarly, the determination of whether a defect is apparent by reasonable inspection is a factual determination that will not be disturbed by an appellate court unless manifestly erroneous. Dage, supra; McMorris v. Marcotte Builders, L.L.C., 98-2302 (La.App. 1st Cir.12/28/99), 756 So.2d 424, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 1158.
In the instant case, Kalil testified that he had been in the real estate business for more than 20 years and owned over twenty real estate properties. He testified that he decided to purchase the apartment complex at issue after viewing an advertisement in the newspaper. Kalil admitted that he did not hire a professional to inspect the property. He stated that he and Taylor "walked around the property, looked at the property." Kalil testified that during his inspection of the property, he saw the "slope and the rocks." He stated that Taylor informed him that he had constructed the retaining wall on the back side of the property and had reinforced it with fill dirt and rip-rap, but Taylor did not make him aware of any problems associated with the wall or the property. Kalil also testified that after he inspected the property, he requested that Taylor construct a privacy fence because he "was concerned for some kids falling going and jumping on these rocks." Taylor subsequently erected the privacy fence.
Kalil also testified that he learned of the problems with the property approximately two months after the sale when one of the original plaintiffs called him. He later learned that the retaining wall and rip-rap encroached onto the property of the condominium owners. Kalil further testified that he would not have purchased the property if he had known about the ongoing drainage problems or if he had known that the retaining wall and rip-rap were located outside of the boundary of the property.
Taylor testified that when he and Kalil discussed the rip-rap, he informed Kalil that he had experienced "a problem with dirt going over these people's yard." Taylor stated that he did not disclose the *475 problems in detail because he believed the problem had been corrected by the construction of the retaining wall and rip-rap. Taylor denied having knowledge that the retaining wall and rip-rap encroached upon the neighbors' property.
Jerry Lazenby, an expert in civil engineering, testified during the trial. He stated that he inspected the retaining wall and opined that the wall was improperly designed and improperly constructed. He stated that the wall was leaning and would eventually fall. Lazenby testified that the drainage was altered when the apartment complex was constructed, resulting in the silt and dirt flowing onto the neighboring properties. He also opined that the obstruction of the drainage servitude by the fill dirt and rip-rap compounded the problems. Lazenby admitted that the placement of the sandbags, while not the ideal solution, was adequate to correct the problems. He stated that it would be "very difficult" to construct another retaining wall due to the limited amount of space involved.
Dr. Griffin also testified during the trial. He stated that the sandbags "appeared to work quite well" in creating a barrier to contain the water. He stated that silt and sediment continues to accumulate and must be dug out of the channel between the rip-rap and the sandbags. Griffin opined that removing the fill dirt and rip-rap would restore the drainage servitude and "greatly decrease the problems" affecting the neighboring properties.
Mark Thomey was accepted by the court as an expert in engineering. He testified that he had been hired by the Kalils to design a concrete retaining wall within the property lines. Mike Flemister, a licensed contractor, testified the construction of the wall designed by Thomey would cost over $180,000.
After hearing all of the evidence presented, the trial court concluded that there was no defect in the thing sold, i.e., the apartment complex, parking lot and the privacy fence. The court stated:
[B]oth Taylor and Kalil should be left in the place where they find themselves in this matter. Neither took appropriate steps to determine the boundary of this property. Taylor did not have a boundary survey before he built and Kalil did not cause a boundary survey made before he bought. Kalil did visit the property several times and did see all that was there on the property, none of which was hidden from view. As a sophisticated owner of more than one hundred units ... his conduct was unreasonable and contributed to this purchase of property that has a remote contingent liability, only as it relates to the encroaching retaining wall. The apartment buildings themselves, the parking lot, the electrical and plumbing systems all function in the manner in which they were intended and the apartments are profitable, according to Kalil's testimony.
The court further found that even if there was a defect, the Kalils' redhibition claim must fail because any such defect should have been discovered upon inspection.
We agree. The record shows that the apartment complex and its accompanying improvements were suitable for their intended use: there was no evidence to indicate that the Kalils have experienced any difficulty in leasing the apartments or that the tenants or current neighbors were experiencing any inconvenience caused by the retaining wall and rip-rap. As the trial court pointed out, the encroachment of the property onto the utility servitude does not affect the property owned by the Kalils. As noted above, Kalil, an experienced real estate investor, performed an *476 inspection of the property prior to purchasing it. He admitted that he visited the property "three or four times" and had observed the retaining wall and supporting rip-rap. The presence of the retaining wall and rip-rap on a newly constructed apartment complex should have put a reasonably prudent buyer on notice that further investigation was warranted. Yet, the Kalils made no appreciable inquiry into the matter and made no attempt to conduct further inspection or investigation. With regard to the boundary issue, the Kalils purchased the property under the assumption that the retaining wall and rip-rap had been constructed within the boundaries of the property. The Kalils made no attempt to ascertain the boundaries of the property prior to purchasing it. Based on this record, we find no error in the trial court's factual findings and conclusions of law.[2]

CONCLUSION
For the reasons set forth herein, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellants, Fred and Melanie Kalil.
AFFIRMED.
NOTES
[1] The original lawsuit is not at issue in this appeal.
[2] We note that Taylor was aware of the problems that the original plaintiffs were experiencing with regard to water retention and silt in their backyards. However, Taylor made attempts to remedy the problems by placing the retaining wall and rip-rap. He took additional steps to resolve the problem by entering into a stipulation with Kalil, wherein he agreed to purchase the condominiums owned by the original plaintiffs, resulting in the dismissal of the claims against himself as well as Kalil.