606 So.2d 549 (1992)
Patsy ARNOLD, Plaintiff-Appellee,
v.
WRAY FORD, INC., et al., Defendants-Appellants.
No. 23,911-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
*550 Smitherman, Lunn, Chastain & Hill by Donald Lee Brice, Jr., Shreveport, for Wray Ford, Inc., defendant-appellant.
Cook, Yancey, King & Galloway by Kelly W. Strickland, Shreveport, for Wheel-Master, Inc., defendant-appellant.
F.Q. Hood, Jr., Bossier City, for Patsy N. Arnold, plaintiff-appellee.
Hicks & Hubley by Michael S. Hubley, Shreveport, and Gary L. Hayden, Dearborn, *551 Mich., for Ford Motor Co., plaintiff-appellee.
Before MARVIN, HIGHTOWER and STEWART, JJ.
MARVIN, Chief Judge.
In this redhibitory action, Wray Ford, Inc. and Wheel-Master, Inc. appeal a judgment rescinding the sale of a 1987 Ford van to Patsy Arnold and granting Wray Ford indemnification against Wheel-Master, who customized the van.
We amend to award Wray Ford attorney fees against Wheel-Master and affirm.

FACTS
Patsy Arnold purchased the 1987 customized Ford van on December 28, 1987. The van chassis, equipped by Ford for RV conversion, had originally been purchased by Wheel-Master from another Ford dealer in Indiana. Wheel-Master expended over $4,000 installing such things in the van as a radio-stereo system, an electric sofa, a snack table, venetian blinds and curtains, additional lighting, a large window, and a rear air conditioning unit. Wheel-Master sold the customized van to Wray, who sold it to Arnold.
Beginning in January 1988 Arnold returned the van to the dealership on at least 11 different occasions for repair on 32 work orders. On June 10, 1989, Arnold ceased driving the van.
On January 23, 1989, Arnold brought her action in redhibition and alternatively to reduce the price because of defects in the van, some of which were not repaired. Wray filed a cross-claim against Ford Motor Company, a third-party demand against Wheel-Master, and a reconventional demand against Arnold. Ford Motor Company also filed a third-party demand against Wheel-Master.
The trial court noted that many of the van's problems had been repaired, but that Wray's repeated efforts to repair the leaking rear door, the air conditioner, and the radio were unsuccessful. The trial court found these problems alone were sufficient to warrant rescission of the sale, concluding that Arnold would not have purchased the van had she known of the defects. Finding that installation of the rear air conditioner by Wheel-Master caused the air conditioning system to fail and the rear door to leak, the trial court attributed the redhibitory defects, including the radio, to Wheel-Master's modifications to the van.
The trial court rescinded the sale of the van, awarded Arnold $21,285, and granted Wray indemnity against Wheel-Master. Arnold's claims against Ford Motor Company and Ford Motor Company's third party demand against Wheel-Master were dismissed. Only Wray and Wheel-Master appealed.

REASONABLE OPPORTUNITY TO REPAIR
Wray contends that it satisfactorily repaired the majority of the problems with the van and the remaining problems were not sufficient to warrant rescission of the sale, especially considering that Arnold failed to adequately communicate to Wray the problems with the van and that she discontinued bringing the van to Wray for service. Wray contends it did not have a reasonable opportunity to repair the van, emphasizing that Arnold was provided with transportation each time Wray serviced the van and was never told that the van would not be similarly serviced after the warranty expired.
The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices. CC Art. 2531. A good faith seller is to be afforded a reasonable opportunity to repair the defect in the light of the particular circumstances of each case. Factors to be considered are whether the buyer was furnished substitute transportation, the extent to which the buyer's lifestyle was disrupted by the unavailability of the vehicle, the nature of the defect, the difficulty of remedy, and the number of unsuccessful repair attempts. Dreher v. Hood Motor Co., Inc., 492 So.2d 132, 137 (La.App. 1st Cir.1986), citing Dickerson v. Begnaud Motors, Inc., 446 So.2d 536 (La.App. 3d Cir.1984), writ denied. *552 What constitutes a reasonable opportunity to repair a defective product is a question for the finder of fact. Reid v. Leson Chevrolet Co., Inc., 542 So.2d 673 (La.App. 5th Cir.1989).
The trial court found that Arnold afforded Wray more than ample opportunity to repair the van on at least 11 different occasions between January and November 1988. Some defects were never corrected. Arnold purchased another vehicle for transportation because the van did not suit her needs. We cannot find the trial court was clearly wrong in its conclusion that Wray was afforded a reasonable opportunity to repair.

REDHIBITION
Wray denies that the van sold to Arnold had any defect legally sufficient to warrant rescission. Wray argues that Arnold's relief, if any, should be limited to a reduction in the purchase price because Arnold derived substantial use from the van and none of her complaints prevented her using the van as transportation. Wheel-Master denies any vice or defects in its modifications to the van.
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had she known of the vice. CC Art. 2520; Holloway v. Gulf Motors, Inc., 588 So.2d 1322 (La.App. 2d Cir.1991). Inadequate installation of equipment may constitute a redhibitory defect. Calandro's Supermarket v. Hussman Refrig., 525 So.2d 316 (La.App. 1st Cir.1988).
The buyer must prove that the vice existed before the sale. CC Art. 2530; Holloway v. Gulf Motors, Inc., supra. Proof of this fact may be made either by direct evidence or by circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. Holloway v. Gulf Motors, Inc., supra; Reid v. Leson Chevrolet Co., Inc., supra. The circumstantial evidence need not negate all other possible causes. Rey v. Cuccia, 298 So.2d 840 (La.1974); Foster v. Craig Equipment Co., 550 So.2d 818 (La.App. 2d Cir.1989).
Minor defects alone do not constitute redhibitory defects. Even though vices may be minor or may have been repaired, multiple defects collectively may support redhibition. Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La.1992); Holloway v. Gulf Motors, Inc., supra.
In situations where a new vehicle presents such defects as would render its use so inconvenient and imperfect that it is reasonable to conclude the buyer would not have purchased the automobile had she known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the price. Young v. Ford Motor Co., Inc., supra.
The existence of redhibitory defects is a question of fact which should not be disturbed in the absence of manifest error. Foster v. Craig Equipment Co., supra; Reid v. Leson Chevrolet Co., Inc., supra; Dumond v. Houma Toyota, Inc. A.M.C. Jeep, 470 So.2d 484 (La.App. 1st Cir.1985).
The trial court concluded that the air conditioning problems, the rear door leak and the radio problems were sufficient to rescind the sale of the van. The air conditioning problems were the most significant. Eleven of the 32 work orders on the van included air conditioner problems. Wray admits problems with the air conditioning system, but contends that the testimony that the air conditioning never worked is not credible.
Two Wray mechanics testified that if Wray released the van, after repair was undertaken, the air conditioning system must have been functioning properly. Additionally, Wray argues that the system must have been repaired because Arnold did not complain about air conditioning problems after July 25, 1988. Arnold and passengers who rode in her van testified that the air conditioning did not work. Arnold testified that when she parked the van on June 10, 1989, the air conditioning and *553 the radio were not working, the rear door leaked, and the button on the rear door continued to stick.
Reasonable minds could conclude that the multiplicity of problems and the recurrence of some of the problems rendered the use of the van so inconvenient and imperfect that no reasonable person would have purchased the van, even at a lower price, had she known of the vice.

INDEMNIFICATION
Wray contends that although the trial court was correct in granting indemnification against Wheel-Master, indemnification should also have been granted against Ford Motor Company because some of the problems originated with Ford Motor Company. Additionally, asserting that Ford Motor Company manufactured the van for conversion and reasonably expected it to be converted, Wray contends that Ford Motor Company should be responsible for the failure of the van's components to accommodate the anticipated conversion modifications. Wray argues that neither Wheel-Master nor Ford Motor Company presented any evidence to show that the defects in the van could have been easily remedied by Wray or that Wray negligently repaired the van.
Wheel-Master contends that it is clearly shown that both Wray and Ford Motor Company were at fault and that the modifications Wheel-Master made to the van were minor when compared to the van as a whole. Wheel-Master argues that some fault should be placed upon either or both Ford Motor Company or Wray. Wheel-Master further contends that Wray was not entitled to indemnification because it was either dilatory in repairing minor defects or it failed to repair countless items which could or should have been quickly repaired or remedied.
In any case in which the seller of a thing manufactured by another is held liable because of redhibitory defects in the manufactured thing, the seller shall have a corresponding and similar right of action against the manufacturer of the defective thing for any losses sustained by the seller. CC Art 2531. To succeed in an action against the manufacturer, the seller must show the manufacturer of the vehicle was the sole cause of the redhibitory defect for which the seller was cast in judgment. LaFrance v. Abraham Lincoln Mercury, Inc., 462 So.2d 1291 (La.App. 5th Cir.1985), writs denied. Liability for indemnity arises only when the indemnitee is free of fault and has discharged a debt that should be paid wholly by the indemnitor. Klumpp v. XYZ Ins. Co., 547 So.2d 391 (La.App. 3d Cir.1989), writ denied.
If the basis for redhibition is the dealer's failure to cure easily remedied defects, it would be unjust to require the manufacturer to accept return of the now used-vehicle and to pay the dealer the retail price of the car, plus dealer profit and attorney's fees. The dealer ought not to recover a loss caused by its own fault, at the expense of the manufacturer. Perrin v. Read Imports, Inc., 359 So.2d 738 (La. App. 4th Cir.1978).
The seller's failure to remedy easily repairable defects, the seller's dilatory actions or tardiness in repairing the vices, or the seller's negligent repair have been held to constitute seller fault that will bar the seller's recovery from the manufacturer. Wheeler v. Clearview Dodge Sales, 462 So.2d 1298 (La.App. 5th Cir.1985).
Both Wheel-Master and Wray contend that Ford Motor Company was not free of fault. Asserting there were leaks in the driver's door as well as the rear door of the van, Wheel-Master contends that the trial court erred in attributing the rear door leaks solely to its installation of the rear air conditioner. Wheel-Master and Wray also argue that other problems (such as the heater, power door locks and power windows, drive shaft, wind noise, paint on front grill, front seat belt, back door button, and door leaks) were directly attributable to Ford, as the manufacturer. Wheel-Master and Wray contend that Ford should be held responsible for the failure of its components to accommodate modification because Ford manufactured and sold the van for ultimate conversion.
*554 Wheel-Master also contends that Wray was not free of fault because Wray eventually replaced or reinstalled all of the stereo wiring. Wheel-Master suggests that Wray never eliminated all of the air bubbles and dirt in the paint after repainting the hood of the van on three different occasions.
The trial court found that the failure of the air conditioning system and the rear door leak occurred because Wheel-Master failed to properly install the rear air conditioner. This finding is supported by the testimony of a Wray mechanic. He explained that the improper installation of the rear air conditioning system caused the rear door not to fit and properly seal. The air conditioning system failed because of a leak at the splice connector (where the rear air conditioning system was attached to the van's original system). Such a leak affects both the rear air conditioning system and the front air conditioning system. The trial court also found Wheel-Master to be solely responsible for the problem with the van's stereo system which it installed.
The trial court concluded that other problems with the van were not sufficient in themselves to warrant rescission of the sale. Arnold agreed the "other problems" were not the basis for her claim for rescission, most of which were corrected by Wray to her satisfaction. She testified that the only other remaining problems included the switch on the back sofa, the cruise control and the paint job, but was uncertain whether or not she even complained about the back sofa or the cruise control. These problems did not make use of the van so inconvenient that she would not have purchased it with knowledge of the defects.
The trial court found that Wray met its burden of proving that defects existed in the van when it was sold by Wheel-Master to Wray, but that neither Arnold, Wheel-Master, nor Wray established that the redhibitory defects in the air conditioner, radio and rear door were present when Ford sold the van. The trial court granted Wray indemnification against Wheel-Master, but denied it indemnification against Ford. The record supports the trial court's findings.

ATTORNEY FEES
Wray contends that C.C. Art. 2545 mandates its entitlement to attorney fees against Wheel-Master. We agree. The [manufacturer-] seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer [and indemnitee-seller] in damages. CC Art 2545. A manufacturer is presumed to know of the defects of the products it makes and, therefore is deemed to be a bad faith seller. Young v. Ford Motor Co., Inc., supra; Alleman v. Hanks Pontiac-GMC, Inc., 483 So.2d 1050 (La.App. 1st Cir.1985), writ denied.
Where a dealer is found entitled to indemnification against the manufacturer, it has been held that the indemnity should include any sum the manufacturer may owe the dealer because of the rescission of the sale, including court costs and a reasonable attorney's fee [$2,500] for service in the trial court and on appeal. Alleman v. Hanks Pontiac-GMC, Inc., supra.
The trial court's failure to mention attorney fees in favor of Wray, although perhaps an oversight, is the equivalent of denying attorney fees. Paul v. Ford Motor Co., 392 So.2d 704 (La.App. 3d Cir.1980).
We agree that the trial court should have awarded attorney fees as statutorily mandated. We amend the judgment to award Wray the sum of $2,500 as reasonable attorney fees against Wheel-Master.

PLAINTIFF'S COMPLAINT
Only in her brief does Arnold seek to modify the judgment insofar as it credits Wray for unearned finance charges which she contends she continued to pay in her monthly payments required by her purchase contract obligation. Because she did not appeal or answer the appeal, Arnold cannot seek a modification of the judgment. CCP Art. 2133; Dull v. Gibbs, 577 So.2d 806 (La.App. 2d Cir.1991).

*555 DECREE
We amend to award $2,500 attorney fees to Wray, as against Wheel-Master. As amended, the judgment is AFFIRMED, with costs assessed to Wray Ford, Inc., and Wheel-Master, Inc.