622 So.2d 1208 (1993)
Lowrane JOHNS, Plaintiff-Appellant,
v.
AMERICAN ISUZU MOTORS, INC., and Rountree Olds-Cadillac Co., Inc., Defendants-Appellees.
No. 24963-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1993.
*1209 Desmond E. McGinn, Shreveport, for plaintiff.
Lunn, Irion, Johnson, Salley & Carlisle by Gerald M. Johnson, Jr., Shreveport, for defendant Am. Isuzu Motors, Inc.
Weems, Wright, Schimpf, Hayter & Carmouche by Robert B. Dunlap, II, Shreveport, for defendant Rountree Olds-Cadillac Co., Inc.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
In this suit concerning the sale of an allegedly defective vehicle, plaintiff, Lowrane Johns, appeals a judgment in favor of the automobile manufacturer and its dealership. For the reasons that follow, we affirm.

FACTS
On April 7, 1989, Lowrane Johns purchased a 1989 Isuzu I-Mark from the manufacturer's then-authorized dealer, Rountree Olds-Cadillac Co., Inc. ("Rountree"). Four days after delivery of the small hatchback, she returned to the dealership to have air conditioning and a cigarette lighter installed. Her next visit there, on June 20, 1989, concerned cosmetic repairs to carpeting and the replacement of a certain *1210 seal. Similarly minor work occurred the following month. Later, on August 29, 1989, plaintiff complained about a "squeaking noise in [the] rear area" of the vehicle. According to an invoice in evidence, mechanics determined the problem to arise from the rear shocks, which the employees subsequently replaced on September 20. Likewise, during this same period, comments that the steering wheel vibrated at speeds between 50 and 60 MPH resulted in the tires being balanced. Thereafter, and continuing through November 1991, the customer returned to the dealership twelve more times.[1] On a total of thirteen occasions, she expressed dissatisfaction with what came to be described as a "rattle."
Plaintiff instituted suit against Rountree and American Isuzu Motors, Inc., on October 19, 1990, seeking rescission of the sale under LSA-C.C. Art. 2520 et seq., and also pursuant to Louisiana's "Lemon Law," LSA-R.S. 51:1941 et seq. The petition further alleged that the defendants knew or should have known of the defects at the time of the sale, and thus stood liable for attorney's fees and mental anguish damages.
In a written opinion after trial, the district court noted, first, that the vehicle never left Johns stranded, and, second, that the severity of any existing problem had been "considerably diminishe[d]" by the fact that the technicians working on the car could not duplicate the rattle. Without specifically mentioning the "Lemon Law," the trial judge simply concluded that the evidence "fail[ed] to warrant a determination that the sale ... should be rescinded based upon redhibitory defects." Formal judgment dismissing plaintiff's demands followed; she now appeals.

DISCUSSION

Redhibition
Plaintiff asserts in one assignment that the trial court committed error in finding no redhibitory defect. Of course, an action lies in redhibition when a nonapparent defect in the thing sold renders it absolutely useless, or so inconvenient in use that the law supposes a buyer would not have purchased that item had he known of the vice. LSA-C.C. Arts. 2520, 2521; Savannah v. Anthony's Auto Sales, Inc., 618 So.2d 676 (La.App.2d Cir.1993); Arnold v. Wray Ford, Inc., 606 So.2d 549 (La.App.2d Cir.1992); Manning v. Scott-Hixson-Hopkins, Inc., 605 So.2d 233 (La.App.2d Cir. 1992). See also, generally, Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La.1992).
To prevail in redhibition, a plaintiff must also prove that the defect existed at the time of sale, and that he afforded the seller an opportunity to repair the thing. Savannah, supra; Arnold, supra; Anthony's Auto Sales, Inc. v. Shephard, 600 So.2d 125 (La.App.2d Cir.1992). While minor defects alone do not constitute a redhibitory defect, multiple minor vices cumulatively may support such a finding. Arnold, supra. See also, generally, Young, supra.
Factual determinations, of course, may not be set aside on appeal in the absence of manifest error or clear wrongness. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). Also, when findings of fact are based upon decisions concerning the credibility of witnesses, respect should be accorded to those conclusions for only the factfinder can be aware of the variations in demeanor and voice tone that bear so heavily on understanding and believing what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989). Indeed, this court is mandated not to substitute its own evaluations and inferences for those of the trier of fact. Savannah, supra; Winford Co., Inc. v. Webster Gravel & Asphalt, 571 So.2d 802 (La.App.2d Cir.1990).
Plaintiff testified that she first heard a rattling-type noise, emanating from the rear of the vehicle, two to four months after purchase. Documentary evidence, as mentioned previously, disclosed that complaint *1211 recurring on thirteen of the seventeen instances when she delivered the automobile to the dealer for service through November 1991. Plaintiff also noted that the annoying sound, although ceasing after each of the garage visits, would later invariably return. Other complaints lodged during this time included a broken accelerator pedal, vibration of the steering column, "soft" clutch pedal, rattling in the dashboard, "hard" clutch, "bad" muffler, and failure of the emergency brake indicator light to go off. On each occasion, the dealership accomplished the necessary repairs, all to plaintiff's satisfaction. She further admitted that the vehicle never failed to start, nor presented engine problems, and that it had been driven an accumulated 45,526 miles by November 1991.
The two service managers employed at the Isuzu dealership during this period, John Pennick and Elvin Thomas, also testified. Both indicated that the customer's complaints regarding the rattling sound in question could never be corroborated. Indeed, Pennick recounted that he personally operated the vehicle on one occasion after two mechanics failed to locate the noise, but his discovery efforts similarly proved unsuccessful. At another juncture, he joined plaintiff's attorney and an Isuzu factory representative to travel in the vehicle, while the owner futilely attempted to duplicate the rattle.
Pennick additionally testified that the vehicle contained limited insulation and other acoustical material to diffract road sounds or other automotive noises. Nevertheless, efforts to placate the customer resulted in the replacement of shocks (on three separate occasions), bushings, shims, wheels, and tires.[2]
Observing that the inability of the service technicians to duplicate the noise diminished the severity of any problem "that may in fact exist," the trial court concluded no redhibitory defect had been established. That determination is not manifestly erroneous. Arceneaux, supra. To the contrary, our review of the testimonial and documentary evidence reflects more than ample support for the decision. Hence, this assignment of error lacks merit.

"Lemon Law"
Maintaining on appeal that the district court opinion addressed solely the claim in redhibition, plaintiff asserts in two other assignments that the trial judge erred in "ignor[ing her] claim for relief under LSA-R.S. 51:1941 et seq."[3]
Granted, the district court's reasons for judgment did not specifically mention the "Lemon Law" provisions. Even so, it is well established that the silence of a judgment regarding any demand at issue under the pleadings constitutes an absolute rejection of that demand. Sun Finance Co., Inc. v. Jackson, 525 So.2d 532 (La. 1988); Potvin v. Wright's Sound Gallery, Inc., 568 So.2d 623, n. 1 (La.App.2d Cir. 1990); Hawthorne, Waymouth & Carroll v. Johnson, 611 So.2d 645 (La.App. 1st Cir.1992); Smith v. Hughes Wood Products, Inc., 544 So.2d 687 (La.App.3d Cir. 1989). That rule is clearly applicable in the instant matter.
Moreover, upon reviewing the claim under the "Lemon Law" legislation,[4] we *1212 find that plaintiff did not establish the requisite grounds for recovery. As previously explained, essentially all problems discerned by Johns resulted in satisfactory repair by the dealership. In fact, she testified that 90 to 95 percent of her dissatisfaction concerned the rattle.
In reference to that annoyance, a high degree of doubt immediately exists as to the validity of plaintiff's claim under the warranty inasmuch as that agreement expressly excludes "normal noise, vibration, wear, tear or deterioration[.]" Considering the testimony of Pennick and Thomas, the record suggests that any sound similar to that described by Johns could well be characterized as normal for the automobile model involved.
In any event, plaintiff did not demonstrate that her vehicle contained defects substantially impairing its use and/or market value. Instead, the record shows that her complaints could not be substantiated by the dealership's technicians, and that the general construction of the Isuzu I-Mark entailed little acoustical materials for sound diffraction.
In sum, the evidence does not establish "nonconformity" with an applicable express warranty as envisioned by LSA-R.S. 51:1941 et seq. Hence, the rejection of plaintiff's claims should be affirmed.

CONCLUSION
Accordingly, the judgment of the trial court dismissing plaintiff's demands is affirmed at her cost.
AFFIRMED.
NOTES
[1] Based on the record, probably in about mid-1990, another Shreveport company became the authorized Isuzu dealer. Accordingly, plaintiff subsequently presented her vehicle for repair at the new location.
[2] Some other unrelated minor repairs included replacement of two accelerator pedals and a muffler, inspection of the clutch mechanism, and repairs to torn carpeting. The dealership also replaced the rear wheel bearings in June 1991; however, the trial court found this work did not arise from any defect but constituted normal maintenance.
[3] As we commented in Manning, supra, the remedies available under this consumer protection statute, commonly designated as the "Lemon Law," appear to be a responsibility of only the manufacturer. See LSA-R.S. 51:1944, 51:1948. However, seeking relief under this legislation in no manner "limits the rights or remedies ... otherwise available to a consumer under any other law." LSA-R.S. 51:1946. These other remedies, of course, include redhibition. Young, supra.
[4] In pertinent part, LSA-R.S. 51:1942 and 1944 state:

§ 1942. Manufacturer's duty to repair; nonconformity
If a new motor vehicle does not conform to an applicable express warranty, and the consumer reports the nonconformity to the manufacturer or any of its authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or during a period of one year following the date of the original delivery of the motor vehicle to a consumer, whichever is the earlier date, the manufacturer, its agent, or its authorized dealer shall make such repairs as are necessary to conform the vehicle to such warranty, notwithstanding the fact that such repairs are made after the expiration of such terms or such one-year period.
§ 1944. Motor vehicle replacement or refund
A. If after four or more attempts within the express warranty term or during a period of one year following the date of the original delivery of the motor vehicle to the consumer, whichever is the earlier, the nonconformity has not been repaired or if the vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days during the warranty period, the manufacturer shall:
(1) Replace the motor vehicle with a comparable new motor vehicle, or, at its option,
(2) Accept return of the motor vehicle and refund the full purchase price plus any amounts paid by the consumer at the point of sale, and all collateral costs less a reasonable allowance for use to the consumer, or any holder of a perfected security interest in the motor vehicle, as their interest may appear, if the transaction was a sale.
"Nonconformity" is defined by the statute as "any specific or generic defect or malfunction, or any defect or condition which substantially impairs the use and/or market value of a motor vehicle." LSA-R.S. 51:1941(7). It has been observed, however, that both this definition and LSA-R.S. 51:1944 A are ambiguous. See Williams v. Chrysler Corp., 530 So.2d 1214 (La. App.2d Cir.1988), writ denied, 532 So.2d 133 (La.1988).