STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1502

THERA HEAROD

VERSUS

SELECT MOTOR CO., INC., ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 220,955
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

AFFIRMED.

John Albert Ellis
Louisiana Department of Justice, AAG
P. O. Box 1710
Alexandria, LA 71309
Telephone: (318) 487-5944
COUNSEL FOR:
    Defendant/Appellee - Louisiana Dept. of Public Safety & Corrections, Office of Motor Vehicles

James Michael Dill
The Dill Firm, A.P.L.C.
825 Lafayette Street
Lafayette, LA 70501
Telephone: (337) 261-1408
COUNSEL FOR:
    Plaintiff/Appellant - Thera Hearod

**Eugene A. Ledet, Jr.**
**Rivers, Beck, Dalrymple & Ledet**
**P. O. Drawer 12850**
**Alexandria, LA 71315-2850**
**Telephone: (318) 445-6581**
**COUNSEL FOR:**
      **Defendant/Appellee - Select Motor Co., Inc.**

**THIBODEAUX, Chief Judge**.

Thera Hearod (Mrs. Hearod) appeals the trial court judgment denying her claim in redhibition against Select Motor Company, Inc. (Select), a classic car dealership. Mrs. Hearod asserts that the trial court erred because Select's failure, for approximately two years, to provide her with a title to the car she purchased constitutes a redhibitory defect which existed at the time of the sale of the vehicle.

## I.

## ISSUE

We shall consider whether the trial court committed manifest error in finding that Select's failure to provide Mrs. Hearod with a title to the car did not constitute a redhibitory defect. Alternatively, if a redhibitory defect indeed existed, we shall consider whether the defect was reasonably corrected in light of the particular circumstances surrounding this case.

## II.

## FACTS

The 1972 Chevrolet Chevelle in dispute was originally owned by Select, a classic car dealership located in Ball, Louisiana. In due course of business, Select sold the Chevelle to the Morgans, a couple from Indiana. After purchasing the Chevelle, the Morgans decided not to keep the car and put it up for sale. The Morgans consigned the vehicle to Select for resale. Select found a buyer. This last buyer abandoned the vehicle. Once the vehicle was found, a state trooper conducted a physical inspection of the vehicle, as required by the State when a vehicle is abandoned. However, upon conducting the inspection, the state trooper incorrectly recorded the Chevelle's vehicle identification number (VIN).

At this point, the Chevelle came into the possession of Gene's Used Parts and Wrecker Service (Gene's). Gene's was not interested in keeping the car; rather, it wanted to sell it. Accordingly, it filed an "Affidavit of Physical Inspection for Vehicle Identity Verification" in order to acquire a Permit to Sell. The affidavit was completed by an officer with the Louisiana State Police. The affidavit reflected the incorrect VIN of the Chevelle as previously recorded by the state trooper. Nonetheless, a Permit to Sell was issued to Gene's by the Department of Public Safety and Corrections (DPSC).

Once Gene's received its Permit to Sell, it contacted Select and inquired whether it was interested in purchasing back the Chevelle. Select accepted. In the process of purchasing the vehicle, Select became aware of the clerical error with the Chevelle's VIN. Once the purchase was finalized, Select underwent proper protocol to correct the inaccurate VIN of the Chevelle. Eventually, on August 4, 2004, the DPSC issued a Certificate of Title to Select, which included the correct VIN of the Chevelle. At this point, Select possessed valid title to the vehicle and placed it in the dealership for sale.

Mrs. Hearod was interested in buying an antique car for her teenage daughter who was about to enter college. Thus, on or about August 16, 2004, she visited Select and purchased the 1972 Chevrolet Chevelle. Mrs. Hearod paid $32,938.20 for the vehicle, which included tax, title, license, and an extended warranty.

As it is customary with the purchase of any car, Select completed the registration process for a temporary tag on behalf of Mrs. Hearod to allow her to legally drive her newly purchased car while she waited for the license plate to arrive. However, while Mrs. Hearod was waiting for her license plate, an employee from the

2

DPSC contacted Select and informed them that the issuance of the title was placed on hold due to discrepancies involving the VIN of the Chevelle. Select apprised Mrs. Hearod of the problem existing with the issuance of the title and rapidly applied for a second temporary tag for Mrs. Hearod to allow her to use the vehicle, while the discrepancies in the title were corrected.

However, after the expiration date of the second temporary tag, the problem with the title had not been resolved. As a consequence, Mrs. Hearod was unable to drive the car any longer because without a valid title she was unable to insure the car nor acquire a license plate. Therefore, in an effort to expedite the issuance of the title for Mrs. Hearod, Select interposed a petition for a *Writ of Mandamus*, whereby it prayed the court to order the DPSC to issue a title in Mrs. Hearod's name. The trial court ordered the DPSC to issue the said title. The DPSC appealed the trial court's judgment to this court, and we affirmed the judgment. *Select Motor Co., Inc. v. State of Louisiana, through Department of Public Safety and Corrections*, 05-1277 (La.App. 3 Cir. 4/5/06), 927 So.2d 604.

In the meantime, Mrs. Hearod filed suit against Select alleging a redhibitory defect. While the parties were awaiting trial, a title in Mrs. Hearod's name was finally issued. The trial court ruled in favor of Select, concluding that a defect did not exist in this case, and even if it did, "Select did everything in its power to correct the defect."

Mrs. Hearod contends that the trial court erred in finding that a defect in the vehicle did not exist at the time of sale when Select was not able to provide a title to the vehicle for a period of two years. Likewise, she avers that the court erred in finding that two years was a reasonable period of time to correct the title defect.

3

III.

## LAW AND DISCUSSION

### Standard of Review

In redhibition cases, "[t]he ultimate question of the existence of a redhibitory vice . . . [is a question] of fact for the trial court, which should not be disturbed in the absence of manifest error or abuse of its wide discretion." *Pardue v. Ryan Chevrolet, Inc.*, 31-52, p. 6 (La.App. 2 Cir. 9/28/98), 719 So.2d 623, 626-27, *writ denied*, 98-2714 (La. 12/18/98), 734 So.2d 639 (citations omitted). Consequently, "[a]n appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong." *Blackman v. Brookshire Grocery Co.*, 07-348, p. 2 (La.App. 3 Cir. 10/3/07), 966 So.2d 1185, 1187 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)). "In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Tidwell v. Premier Staffing, Inc.*, 05-500, p. 2 (La.App. 3 Cir. 2/1/06), 921 So.2d 1194, 1196 (citations omitted). Accordingly, we will review the record in its entirety to determine whether the trial court's factual findings were reasonable in light of the record evidence.

### A.

**Did the trial court err in finding that the failure of Select to provide Mrs. Hearod with a title to the car for a period of two years did not constitute a redhibitory defect?**

Louisiana Civil Code Article 2520 defines redhibition as follows:

. . .

A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of

4

the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

Generally, "[a] car on which a certificate of title cannot be obtained has a redhibitory defect." *Price v. Overseas Sports, Inc.*, 362 So.2d 587, 588 (La.App. 3 Cir. 1978). Therefore,

[to] prevail in a redhibitory action, the plaintiff must prove that: (1) the thing sold is absolutely useless for its intended purpose or its use so inconvenient that had he known of the defect, he would never have purchased it; (2) the defect existed at the time of sale but was not apparent; and (3) the seller was given an opportunity to repair the defect.

*Pardue*, 719 So.2d at 626 (citations omitted).

In instances where the seller was not aware of the vice of the thing, he is only bound to repair, remedy or correct the vice before a redhibitory action can be brought, whereas a bad faith seller has no corresponding right. La.Civ.Code art.2531; *Dickerson v. Begnaud Motors, Inc.*, 446 So.2d 536 (La.App. 3 Cir.), *writ denied*, 449 So.2d 1349 (La.1984). Furthermore, "[a] good faith seller is to be afforded a reasonable opportunity to repair the defect in the light of the particular circumstances of each case." *Arnold v. Wray Ford, Inc.*, 606 So.2d 549, 551 (La.App. 2 Cir. 1993). "What constitutes a reasonable opportunity to repair a defective product is a question for the finder of fact." *Id.* (citation omitted). In assessing whether the seller was afforded a reasonable opportunity to repair the defect, courts consider factors such as "whether the buyer was furnished substitute transportation, the extent to which the buyer's life-style was disrupted by the unavailability of the vehicle, the nature of the

5

defect, the difficulty of remedy, and the number of unsuccessful repair attempts." *Id.* at 551 (citations omitted).

In this case, after a thorough review of the record, it is clear that the evidence supports the trial court's judgment. The judgment is neither manifestly erroneous nor clearly wrong. Admittedly, Mrs. Hearod proved that the use of the car was so inconvenient that had she known of the defect, she would never have purchased it, as she was only able to drive it for a total of 1,075 miles since its purchase because, upon the expiration of her second temporary tag, she was unable to either insure the car or acquire a license plate without a valid title. Nevertheless, we find that Mrs. Hearod failed to establish that a redhibitory defect pertaining to the title existed at the time of sale.

As the trial court concluded in its written reasons for judgment, Select possessed a valid title to the vehicle at the time of sale, and it had no reason to believe that the issuance of a new title in Mrs. Hearod's name would be denied. Moreover, it was only after the sale that the Department of Public Safety and Corrections refused to issue a valid title to the vehicle due to previous discrepancies. But, assuming *arguendo* that a redhibitory defect in the title existed, Select, as a good faith seller, was entitled to be given a reasonable opportunity to repair the defect in light of the particular circumstances of this case. *Arnold,* 606 So.2d at 551. We conclude that Select attempted, in a reasonable manner, to correct the problems encountered with the title. For instance, Select interceded on behalf of Mrs. Hearod by interposing a petition for a *Writ of Mandamus*, praying the court to order the Department of Public Safety and Corrections to issue a valid title in Mrs. Hearod's name.

Notwithstanding Select's attempts to secure a valid title for Mrs. Hearod, she contends that the lapse of two years before the title was finally issued was not

reasonable and, thus, constitutes a redhibitory defect. We disagree. It is clear from the record that Select did everything within its reach to secure a valid title for Mrs. Hearod. However, there are unforeseen instances when the issuance of title to a used vehicle must go through a dilatory bureaucratic procedure in order to amend any discrepancies and deficiencies in the title that may have surfaced due to previous ownership interests or plainly as a result of human fallibility. In this case, Select had no control over this procedure and was unable to expedite its progress. Therefore, in light of these circumstances, we find that Select corrected the alleged defect in a reasonable manner, thereby obliterating any redhibitory defect that may have existed.

IV.

## CONCLUSION

For the foregoing reasons, we find that Mrs. Hearod failed to prove all of the factors needed to establish that a redhibitory defect in the title existed at the time of sale where Select was not able to provide a title to the vehicle for a period of two years. Similarly, we find that she failed to prove that, under the particular circumstances surrounding this case, two years was an unreasonable period of time to correct the alleged defect in the title.

All costs are assessed to plaintiff, Thera Hearod.

**AFFIRMED.**