Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,095-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DONALD R. MODICUE                              Plaintiff-Appellee

versus

PRINCE OF PEACE AUTO SALE,                     Defendant-Appellant
LLC

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-CV-04012

Honorable Tammy D. Lee, Judge

* * * * *

BRIGETTE SWAYZER                               Agent for Appellant


OFFICE OF ANTHONY J. BRUSCATO                  Counsel for Appellee
By:  Anthony J. Bruscato




* * * * *

Before THOMPSON, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

Defendant, Prince of Peace Auto Sale, LLC, by and through its agent, Brigette Swayzer, appeals a judgment by the Monroe City Court in favor of Donald Modicue awarding damages and attorney fees totaling $7,591.78. We AFFIRM the judgment, but AMEND to remove the award of general damages and to include a credit to the seller.

## FACTS

The plaintiff, Donald Modicue ("Modicue"), purchased a used 2008 Ford Fusion from the defendant, Prince of Peace Auto Sale, LLC ("Prince of Peace"), the sole member/owner of which is Brigette Swayzer ("Swayzer"), on April 13, 2019, for a sale price of $3,995.00. Modicue paid a $1,500.00 down payment and the balance was financed at a 29.9% interest rate payable to Prince of Peace.

Modicue test drove the vehicle prior to purchase, but claims that he did not reach any high speed. At the time of purchase, the vehicle had only one minor issue disclosed, a broken interior door handle. Swayzer promised to have the door handle repaired and sent representatives to do so, but they were apparently unable to. According to Modicue, immediately following the purchase, the car began to develop more problems. Once, when he was operating the car at a higher rate of speed, the engine began to shake. This led to the discovery of a defective motor mount which Swayzer promised to reimburse him for. Other issues with the car included: a failed battery and alternator, power steering malfunction, and oil leak. These issues allegedly resulted in the car being in and out of the shop with Modicue having little use of it, as well as Modicue having to pay for these repairs.

After five months of owning the car, Modicue missed several car payments (it is disputed the exact number missed or late). Modicue then sued Swayzer seeking rescission of the sale and damages, alleging that the vehicle had multiple defects. Swayzer in turn seized the car for Modicue's failure to make payments. On July 7, 2020, the Monroe City Court rendered judgment in favor of Modicue, granting rescission of the sale based on a redhibition claim, and awarding special damages of $3,591.78, general damages of $1,500.00, and attorney fees of $2,500.00, for a total damage amount of $7,591.78, with Prince of Peace maintaining possession of the vehicle.

Prince of Peace, by and through its agent, Swayzer, now appeals, arguing that the car was in operating condition when sold and was sold "as is," and Prince of Peace should not be held responsible for any unknown defects. She also claims that Modicue's claims are inaccurate in an attempt to avoid responsibility for the payments, and further, that she should be credited for Modicue's use of the vehicle during his possession.

## DISCUSSION

Several issues were raised on appeal, primarily whether the court committed manifest error in granting rescission of the vehicle sale due to a redhibitory defect when there was an "as is" sale, basing its finding on credibility. Other issues include the appellant's assertion of bias, and whether there is jurisdiction over the appeal based on an untimely appeal. The claim of bias is unfounded and warrants no further discussion. This Court first addresses the issue of jurisdiction and whether the appeal is timely in order to proceed with any discussion regarding the validity of the rescission.

2

**Jurisdiction – Untimely Appeal**

"An appeal from a judgment rendered by a city court or a parish court may be taken only within ten days from the date of the judgment or from the service of notice of judgment, when such notice is necessary." La. C.C.P. art. 5002. In *Myles v. Turner*, 612 So. 2d 32 (La. 1993), the Louisiana Supreme Court stated that "we hold that the 10-day appeal delay provided for in La. Code Civ. Proc. Art. 5002 commences to run upon *receipt* of notice of judgment rather than upon the mere mailing of said notice."

In this case, a notice of judgment was mailed by the Monroe City Court to Prince of Peace, through its agent, Swayzer, to the business address of 1619 South Grand Street, Monroe, LA 71202, on November 9, 2020, as evidenced by a certificate of mailing. The notice of judgment was stamped with that same date. Swayzer's motion for suspensive appeal was filed on December 3, 2020, which was 24 days following the *mailing* of the judgment. An order granting Swayzer's appeal was entered and filed on December 7, 2020.

There is a presumption in Louisiana that "[w]hen a letter has been properly addressed, stamped and mailed it is presumed to reach the addressee." *Ragas v. Social Security Admin.*, 99-2684, (E.D. La. March 1, 2002), 2002 WL 362816. It is presumed that the judgment was mailed since the certificate of mailing was executed by a deputy clerk and is part of the record, and the address listed on the certificate is what was provided by Swayzer. Since the notice was properly addressed, stamped, and mailed, it is presumed to have reached Swayzer at some point. However, there is nothing in the record showing that the notice of judgment was sent via certified or registered mail, or some other delivery service in which receipt is

3

acknowledged; therefore, it is uncertain the exact date on which notice of the judgment was received by Swayzer.

Modicue argues this Court lacks jurisdiction due to an untimely appeal, but provides no evidence to support this argument. There were no certified mail receipts or any receipt acknowledgments to show receipt by Swayzer. The record reflects that the motion for appeal sent to Prince of Peace and Modicue, and the notice of appeal sent to the Judicial Administrator, Louisiana Second Circuit Court of Appeal, Modicue, and Prince of Peace, were all delivered via certified mail and included delivery acknowledgments for all recipients. It is puzzling that there would be no delivery acknowledgement for the very document for which it would be most useful, since there is a specific delay applicable to the service of the judgment.

The facts in *Smith v. Winn-Dixie Louisiana, Inc.*, 626 So. 2d 750 (La. App. 5 Cir. 1993), are very similar to those in this matter. The trial court had rendered judgment against Winn-Dixie and notice of the judgment was mailed to counsel of record for both parties on November 13, 1992. Winn-Dixie suspensively appealed the judgment on December 9, 1992, 26 days later. *Id*. The Fifth Circuit issued an order, sua sponte, directing the parties to show cause why the appeal should not be dismissed on the basis it was taken untimely, but neither party ever filed a response to the court's order. *Id*. By issuing the order, the court seemingly acknowledged that there was a legitimate possibility that the appeal was timely. Here, this Court has chosen not to issue such an order to show cause, but to proceed with its opinion based on the reasoning herein.

4

The Fifth Circuit in *Winn Dixie* stated:

> While the *Myles* holding is relevant to the case before us today, and mindful of its importance, this court cannot speculate that counsel for Winn-Dixie did not receive the notice of judgment until November 29, 1992, or later. Moreover, based on the fact that the defendant was given ample opportunity (through July 26, 1993) to show its appeal was filed timely, and has failed to file anything with this court since its appeal brief of May 28, 1993, this court must conclude that the notice of judgment was received by counsel for Winn-Dixie prior to November 29, 1992, and that therefore, the appeal is untimely. *Id*.

The Fifth Circuit stated that it could not speculate that counsel for appellant did not receive notice until the date that would allow for a timely appeal, within ten days of notice. *Id*. However, the Court based its decision on the fact that the defendant failed to show its appeal was timely after being given the opportunity to do so upon the issuance of the rule to show cause order.

This Court finds the opposite result using the Fifth Circuit's same reasoning in *Winn-Dixie*. If we cannot speculate as to notice *not* being received, we should not be able to speculate that notice *was* received. This Court cannot look at information beyond what is contained in the appellate record. The appellee presents the argument of lack of jurisdiction due to an untimely appeal, but provides no support. There is nothing in the record to show the appeal was untimely filed since there was no acknowledgment of receipt. "Actual knowledge of the signing of the judgment outside of the record and absent compliance with the mailing or service requirement is not sufficient to cause new trial and appeal delays to commence." *Morice v. Alan Yedor Roofing and Construction*, 16-532 (La. App. 5 Cir. 2/8/17), 216 So. 3d 1072. Also, given the timing of the mailing – during the 2020 presidential election and the ongoing COVID pandemic – it is not unreasonable to believe that mail could have been significantly delayed

5

where Swayzer did not receive the notice until at least November 23, 2020, such that she would have met the filing deadline.

*Calogero v. USA Agencies Casualty Insurance Company, Inc.*, 2019-0347 (La. App. 4 Cir. 12/4/19), 286 So. 3d 586, is also comparable to this case and *Winn-Dixie*. Notice of signing of judgment was issued by the clerk of court on November 16, 2018, but the plaintiff did not file a motion for devolutive appeal until January 11, 2019, 54 days later. *Id.* As in *Winn-Dixie*, the Fourth Circuit ordered the plaintiff to show cause as to why the appeal should not be dismissed as untimely. *Id.* Counsel for the plaintiff/appellant did respond with an affidavit stating that she had moved her law office just two weeks prior to mailing the notice and had not received the notice. *Id.* The attorney continued to use her previous office address on pleadings and correspondence through November 2018 and into January 2019. *Id.* The Court cited the relevant city court rule regarding an attorney's obligation when moving offices, to change the address on all pleadings previously filed on which the former address has been shown, the failure to do so barring the attorney from pleading nonreceipt of a notice mailed by the court to the address originally shown on the pleadings. *Id.* The Court in *Calogero* recognized the decision in *Myles*, but ultimately held that the appeal was untimely, based on the specific court rule regarding an office relocation that barred the attorney from pleading nonreceipt. *Id.*

Here, Prince of Peace was not represented by counsel and did not allege failure of receipt due to change of address or any other reason. In fact, appellant, appearing pro se, should generally be given wide latitude, as she is at a disadvantage having no formal training in the law and rules of procedure. *In Re: Medical Review Panel Claim of Scott*, 206 So.3d 1049

6

(La. 2016). The Court in *Credit Acceptance Corporation v. Prevo*, 52,734 (La. App. 2 Cir. 6/26/19), 277 So. 3d 847 stated that, "In the interest of justice, this court will read pro se filings indulgently and try to discern the thrust of the appellant's position and the relief she seeks." Citing *Magee v. Williams*, 50,726 (La. App. 2 Cir. 6/22/16), 197 So. 3d 265. A pro se litigant does assume responsibility for her lack of knowledge of the law, *Scott, supra*, but there is nothing in the record that shows appellant claims ignorance of the law as a defense and this Court does not find such a defense is necessary.

Appeals are favored in law and any doubt shall be resolved in favor of maintaining, rather than dismissing an appeal. *Alan Yedor Roofing*, *supra*. Unless the grounds for dismissal are free from doubt, the appeal should be maintained. *Id.*

This Court bases its reasoning primarily on the fact that the record does not show that appellant did *not* receive the notice of judgment, with the position that it is not unreasonable to believe that circumstances of the timing of the mailing were such that the notice could have been received by Prince of Peace by a date that would result in a timely appeal. This court is further influenced by its ability to afford some level of leeway to pro se litigants. The grounds for dismissal based on lack of jurisdiction for an untimely appeal is not free from doubt, and that doubt should be resolved in favor of maintaining this appeal.

Warranty of Redhibition:

A seller warrants the buyer against redhibitory defects or vices in the thing sold. La. C.C. art. 2520. A defect is redhibitory when it "renders the thing useless, or its use so inconvenient that it must be presumed that the

buyer would not have bought the thing had he known of the defect." *Id.*
The existence of this type of redhibitory defect enables the buyer to obtain rescission of the sale. *Id.* A thing can also contain a redhibitory defect when the defect "diminishes its usefulness or its value so that it must be presumed the buyer would still have bought it, but for a lesser price." *Id.* This type of defect limits the right of a buyer to seek a reduction of the price. *Id.* Further, although minor defects alone do not constitute redhibitory defects, multiple defects collectively may support redhibition. *Young v. Ford Motor Co., Inc.*, 595 So. 2d 1123 (La. 1992). The existence of redhibitory defects is a question of fact which should not be disturbed in the absence of manifest error. *Berney v. Rountree Olds-Cadillac Co.*, 33,388 (La. App. 2 Cir. 6/21/00), 763 So. 2d 799.

The buyer of an automobile who asserts a redhibition claim need not show the particular cause of the defects making the vehicle unfit for the intended purposes, but rather must simply prove the actual existence of such defects. *Young v. Ford Motor Co.*, *supra*. In general, the intended purpose of an automobile is transportation. *Guillory v. Morein Motor Co.*, 322 So. 2d 375 (La. App. 3 Cir. 1975). Inherent in the sale of an older car is the knowledge that the machinery and parts are worn and subject to breakdown and that the vehicle will require mechanical work from time to time to keep it in good running condition. *Burch v. Durham Pontiac Cadillac, Inc.*, 564 So. 2d 380 (La. 1990). Although the warranty against redhibitory defects does not apply as extensively as with new products, it requires that even used equipment operate reasonably well for a reasonable period of time. *Berney, supra.*

8

The warranty against redhibitory defects extends only to defects that exist at the time of delivery. La. C.C. art. 2530. The buyer must prove that the vice existed before the sale. *Id*. *Holloway v. Gulf Motors*, 588 So. 2d 1322 (La. App. 2 Cir. 1991). Proof of this fact may be made either by direct evidence or by circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of sale. *Boos v. Benson Jeep-Eagle Co., Inc.*, 98-1424 (La. App. 4 Cir. 6/24/98), 717 So. 2d 661. There is a presumption that a vice existed before the sale if it has made its appearance within three days immediately following the sale. La. C.C. art. 2530.

To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993). Even if an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Cole v. State Dept. of Public Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Id*. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id*. Moreover, where the factfinder's conclusions are based on determinations regarding credibility of witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and

9

tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).

The lower court is in the best position to determine credibility of witnesses. *Id.* It weighed the testimony of both parties and ultimately decided that there was a valid redhibition claim that warranted rescission, so it presumably found in favor of Modicue on all elements necessary to establish such a claim.

Modicue claims that he had chronic problems with the vehicle following purchase, including a defective motor mount, failed battery, power steering malfunction, failed alternator, and oil leak. He alleges that at one point, the vehicle was in the shop for two months to get the alternator repaired. He testified that he did not initially notice the problems with the vehicle, but that they became apparent within a few days of purchase. He stated that he made numerous trips back to the car lot to get the car fixed. While there seemed to be some inconsistencies in the exact timeframe the defects became apparent, the court found Modicue's testimony that there were problems with the vehicle shortly after its purchase to be credible.

La. C.C. art. 2522 requires that a buyer give a seller notice of the defect and allow time for the seller to repair. If the seller has actual knowledge of the defect, no notice is required. *Id.* A seller who did not know that the thing he sold had a defect is considered a "good faith seller." *Stuck v. Long*, 40,034 (La. App. 2 Cir. 8/17/05), 909 So. 2d 686, *writ denied*, 05-2367 (La. 3/17/06), 925 So. 2d 546. A good faith seller is only bound to repair, remedy, or correct the defect. La. C.C. art. 2531. The buyer must afford the good faith seller a reasonable opportunity to repair the defect in the light of the particular circumstances of each case. *Arnold v. Wray Ford,*

*Inc.*, 606 So. 2d 549 (La. 1992). Factors to consider in determining reasonableness of the opportunity to cure include whether the buyer was furnished substitute transportation, the extent to which the buyer's lifestyle was disrupted by the unavailability of the vehicle, the nature of the defect, the difficulty of remedy, and the number of unsuccessful attempts. *Dreher v. Hood Motor Co., Inc.*, 492 So. 2d 132 (La. App. 1 Cir. 1986). What constitutes a reasonable opportunity to repair a defect is a question for the finder of fact. *Reid v. Leson Chevrolet Co., Inc.*, 542 So. 2d 67 (La. App. 5 Cir. 1989). If the seller fails or is unable to remedy the defect, he must return the purchase price to the buyer with interest from the time it was paid, reimburse him for reasonable expenses occasioned by the sale and for preservation of the item, less the credit to the seller if the use of the item was of value to the buyer. La. C.C. art. 2531; *Alexander v. Burroughs Corp.*, 359 So. 2d 607 (La. 1978).

The city court made a credibility determination based on testimony that Modicue notified Swayzer of the defects after they arose and gave a reasonable opportunity to cure. However, there were never any allegations or findings that Swayzer had knowledge of any defects *at the time of sale*. Therefore, Prince of Peace is considered to be a "good faith seller" who should have been given notice of the defect and a reasonable opportunity to remedy any defects. Prince of Peace failed to remedy the defect, so it is obligated to pay an amount to Modicue equal to the purchase price paid for the vehicle, including any expenses associated with the sale, and for expenses to repair/maintain the vehicle, less a credit for the value Modicue derived from the vehicle.

According to Modicue's testimony, he paid a total of $3,208.78 for the vehicle in the form of a $1,500.00 down payment and $1,708.78 in monthly payments, which covered both the purchase price and associated sale expenses such as tax, title, and license. This amount was essentially uncontested by Swayzer. The city court awarded the $3,208.78 in damages to Modicue.

The court awarded an additional $383.00 in special damages for repair expenses allegedly incurred by Modicue. However, Modicue presented no evidence or documentation of any such expenses paid, other than a basic, typed list of amounts he paid, presumably self-prepared, in which he claims to have paid the total amount of $383.00 in parts and labor for repairs. There were no work orders, testimony by mechanics, copies of invoices, etc., to support an award of special damages for the repair expenses.

The court also awarded general damages in the amount of $1,500.00. It is only in the case of a bad faith seller, one who has knowledge of the defect and fails to declare it, that a seller is answerable to the buyer in general damages. Since Prince of Peace is a good faith seller, the award of general damages is error.

When there is a finding of a redhibitory defect warranting rescission, the seller is to be *credited* for the use of the vehicle if it were of some value to the buyer, reducing any amount awarded for return of the purchase price and reimbursement of expenses relating to the sale and incurred for the preservation of the item. La. C.C. art. 2531; *Alexander v. Burroughs Corp.*, *supra*. Swayzer presented evidence in the form of the bill of sale from Prince of Peace's initial purchase of the vehicle on March 6, 2019, showing mileage of 212,818 miles, approximately one month prior to Modicue's

12

purchase. She claims that the vehicle had 223,079 miles at the time it was repossessed, an additional 10,261 miles over a period of 225 days. It was obviously regularly used and provided value to Modicue as a mode of transportation. Modicue offered no response to Swayzer's claim, and the court failed to address it altogether.

Prince of Peace should have received a credit for the value afforded to Modicue for his use of the vehicle that offset any damages awarded for the redhibition claim. In the reconventional demand, Swayzer requested damages in the amount of $25/day for usage of 225 days for a total of $5,625.00, and $3,591.35 for 0.35/mile for 10,261 miles. This Court denies appellant's specifically requested amounts, but finds the monthly payments made by Modicue while in possession of the vehicle, a total of $1,708.78, to be a sufficient amount for the requisite credit to the Prince of Peace for the value of the vehicle's use derived by Modicue.

The lower court also awarded attorney fees in the amount of $2,500.00. Attorney fees in redhibition cases are specifically allowed under La. C.C. art. 2545. A trial court has great discretion in awarding attorney fees in redhibition cases. *Jones v. Winnebago Indus., Inc.*, 47,137 (La. App. 2 Cir. 05/16/12), 92 So. 3d 1113. We do not find the city court abused its discretion in awarding attorney fees to Modicue.

Modicue was awarded a total of $7,591.78. As stated hereinabove, Modicue should be not be awarded the special damages of $383.00 for repairs since there was no proof of those amounts. There should also be no general damages award of $1,500.00. Further, there should be a credit to the seller for the value afforded to the buyer in the amount of $1,708.78. The

13

award of the amounts paid toward the purchase of the car and the attorney fees should be upheld.

## "As Is Sale" - Waiver of Warranty

Swayzer primarily argues that the vehicle was sold "as is" and she was not responsible for any unknown defects, and claims that there were no known defects at the time of the sale other than the broken door handle. She further claims that she was never informed of any defects or provided any documentation of the supposed defects or any repair expenses paid by Modicue until after he filed suit.

La. C.C. art. 2548 states, in pertinent part, that the parties may agree to an exclusion or limitation of the warranty against redhibitory defects. In order to be effective, a waiver of warranty must: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and (3) either be brought to the attention of the buyer or explained to him. *Prince v. Paretti Pontiac Co.*, 281 So. 2d 112 (La.1973).

The mere fact that a sale is confected "as is" does not create a waiver of all warranties. *Hendricks v. Horseless Carriage, Inc.*, 332 So. 2d 892 (La. App. 2 Cir. 1976). If the act of sale fails to state that the purchaser waives express and implied warranties, including the warranty of fitness for a particular purpose and the warranty against redhibitory vices, it is not sufficiently clear and the seller remains responsible for implied warranties associated with the concept that the thing be fit for the use for which it is intended. La. C.C. art. 2520. The seller bears the burden of proving the warranty has been waived. *Boos v. Benson-Jeep-Eagle Co.*, *supra*.

In *Sabbath v. Martin*, 44,862, (La. App. 2 Cir. 10/28/19), 2009 WL 3449096, the seller claimed that the sale was "as is" and the warranty against

14

redhibitory defects had been waived by the buyer. There were facts that called into question whether the parties understood the waiver of redhibitory defects, mainly the fact that the buyer had initially repaired several defects free of charge without asserting the waiver, resulting in a finding that the waiver was ambiguous and invalid. *Id.*

Even if the language waiver requirements were met, personal assurance of the seller that a car was in good condition qualified a written waiver, rendering its language ambiguous. *Wilks v. Ramsey*, 48,738 (La. App. 2 Cir. 1/15/14), 132 So. 3d 1009.

In this case, the sale contract did contain explicit language that the purchaser waived express and implied warranties, including the warranty of fitness for a particular purpose and the warranty against redhibitory vices. However, there was evidence there was a misunderstanding of the waiver terms. Prince of Peace inserted language into the contract that there was an exception to the "as is" sale for the repair of the door handle, a qualification that resulted in ambiguous terms. In addition, Modicue testified that he repeatedly contacted Swayzer in an attempt to have Prince of Peace remedy the vehicle defects, and that Swayzer told him to bring in repair bills for the defects and she would reimburse him for the amounts, which would operate as an implied warranty that could be relied upon by the buyer. The lower court found that although the sale was intended to be "as is," there was no waiver of warranty in this case. We agree.

**CONCLUSION**

This Court upholds the City Court's finding in favor of the appellee, Donald Modicue, that redhibitory defects existed that warranted rescission of the "as is" sale. The lower court based its finding on a credibility

15

determination that this Court does not disturb. As a result, this Court upholds the award of $3,208.78 for the amounts paid by Modicue for the purchase of the vehicle, but denies the special damages award of $383.00 since Modicue offered no proof in support thereof. However, Prince of Peace is entitled to a credit in the amount of $1,708.78 for value derived from the use of the vehicle by Modicue. Further, since this Court finds Prince of Peace to be a good faith seller, it finds the $1,500.00 in general damages awarded to Modicue to be error.

Therefore, this Court AFFIRMS the finding of the lower court of a claim of redhibition warranting rescission of sale, but AMENDS to remove the award of general damages and to include a credit to the seller, reducing the award of damages from $7,591.78 to $4,000.00. All respective costs of appeal are to be absorbed by the parties.

**AFFIRMED AS AMENDED.**